J-S37017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF L.M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.F.-H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 870 EDA 2019 |

Appeal from the Decree Entered, February 25, 2019,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000921-2018.

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:               **FILED AUGUST 23, 2019**

T.F.-H. (Mother) appeals the decree granting the petition filed by the Philadelphia County Department of Human Services (DHS) to involuntarily terminate her parental rights to her daughter, L.M.H. (Child), pursuant to the Adoption Act.  **See** Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).[1]  After review, we affirm.

The relevant history is as follows:

Mother was 16 years old when she gave birth to Child in October 2015. Mother, evidently the subject of her own dependency proceedings, was residing in a DHS placement.  In the months prior to Child's birth, Mother had absconded from her placement.  Mother and Child were located in December 2015 at the home of a maternal great-aunt.  In December 2015, DHS alleged

_____

[1] The trial court also terminated the rights of the unknown father.

that Mother suffered from depression, that she was noncompliant with her prescribed medication, and that she was truant from high school. The court ordered Mother and Child to be placed together in a home where they could stay together. Apparently, DHS had no other concerns for the majority of 2016.

In January 2017, DHS received a report that Mother faced eviction for her noncompliance with the rules of the group placement. Mother continued to abscond from the home without permission, both with and without the infant Child. In one instance, Child was ill and Mother left her unattended in her crib for 4 and a half hours without any adult supervision. DHS obtained an emergency order removing Child from Mother's care. Child was adjudicated dependent on January 20, 2017.

The court ordered Mother to submit for a drug screen, a dual diagnosis assessment, and monitoring. Mother tested positive for marijuana. The Community Umbrella Agency created a single case plan (SCP) for Mother. Her SCP objectives were: to comply with her placement's curfew; to attend Child's medical appointments; to maintain consistent mental health treatment; to attend school; to have random drug testing; to have visits with Child; to avoid taking Child within one mile of a specific address.[2] The dependency case

_____

[2] The trial court specifically ordered Mother not to take Child within one mile of maternal grandmother's address, due to concerns that alleged drug use and prostitution took place there. The parties stipulated that the home was not safe for Child.

lingered for approximately two years. Mother did not make significant progress towards achieving any of these goals.

In November 2018, DHS petitioned to involuntarily terminate Mother's parental rights under sections 2511(a)(1), (2), (5), (8) and (b). After a hearing, the court denied the petition as to Section 2511(a)(1), but granted the petition on the other grounds.[3, 4] Mother filed this timely appeal, where she presents four issues for our review:

> 1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(a)(2) where Mother presented evidence that she has remedied her situation by providing negative drug screens, attending school and visiting her child and has the present capacity to care for Child?
>
> 2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(a)(5) where evidence was provided to establish that Child was removed from the care of her Mother and Mother is now capable of caring for Child?
>
> 3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(a)(8) where evidence was presented to show that Mother is now capable of caring for Child after she

_____

[3] The court conducted the hearing over two dates, January 14, and February 25, 2019. The hearing also encompassed DHS's petition to change the dependency goal from reunification to adoption. Mother does not appeal the goal change.

[4] Child was properly represented by counsel, pursuant to 23 Pa.C.S.A. § 2313(a).

complied with her placement, attended school and provided negative drug screens?

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(b) where evidence was presented that established Child has a close bond with Mother and had lived with Mother for part of her life. Additionally, Mother consistently visited with Child and maintained a strong bond with Child the entire time Child was in placement.

Mother's Brief at 7.

We review these claims mindful of our well-settled standard or review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section

- 4 -

> 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, the court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a), as well as Section (b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the trial court's decision to terminate pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

…

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b)

Instantly, we analyze the trial court's decision to terminate under Section 2511(a)(2) and (b).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citations, internal quotation marks, and indentation omitted).

- 6 -

Mother essentially concedes she was unable to care for Child previously, but she contends that past incapacity alone is not a sufficient basis for involuntary termination. She alleges that she had substantially completed her SCP goals and that she should be given a chance to provide a home for herself and her child.

Here, we find ample evidence to justify the trial court's termination of Mother's parental rights to Child, pursuant to Section 2511(a)(2). Mother has demonstrated an incapacity to perform parental duties as illustrated by her inability to make any real progress on her goals over the last two years. As late as September 2018, 21 months after the Child's removal, Mother still tested positive in her drug screens; perhaps relatedly, she had entirely refused to address her mental health issues; and she was once again facing removal from her placement home for noncompliance with the rules. Mother was inconsistent with attending Child's medical appointments. While Mother had graduated to unsupervised visits with Child, those visits had to be scaled back because Mother was taking Child to the maternal grandmother's home, a location that Mother agreed was unsafe. Of those supervised visits, Mother arrived late or often missed them entirely. While Mother's progress ebbed and flowed throughout the dependency case, Mother was still incapable of caring for Child, who had to rely on others for her essential well-being. Mother may not have displayed affirmative misconduct, but she has shown an inability to remedy the causes of her incapacity.

We acknowledge that the inherent difficulty that accompanies parenthood when it begins during the parent's own minority. At the time of the termination hearing, Mother was enrolled in the 12th grade. Still, a failure by a parent to remedy the conditions resulting in the child's placement is not confined to affirmative misconduct by the parent. Rather, it encompasses those situations where a parent has attempted to address their incapacity but is ultimately unable to remedy it. In time, a parent's basic constitutional right to the custody and rearing of her child is converted, upon the failure to fulfill her parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. *Matter of M.P.*, 204 A.3d 976, 984 (Pa. Super. 2019) (citing *In re B., N. M.,* 856 A.2d 847, 856 (Pa. Super. 2004)).

For over two years, DHS has attempted to buoy Mother with intensive services. While she has shown sporadic progress, the dependency case ends largely where it began. Meanwhile, Child has been in want of necessary parental care and stability. The court did not abuse its discretion when it determined that competent, clear, and convincing evidence supported the termination of Mother's parental rights pursuant to Section 2511(a)(2), thereby satisfying the first prong of the termination analysis.

Next, we consider whether termination was proper under Section 2511(b). With regard to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability.... [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d at 267 (internal case citations omitted).

Instantly, Mother contends DHS failed to meet these criteria. She points to the social worker's testimony that there was a parental bond between Mother and Child. Mother argues no such bond exists with the foster parent. Indeed, the caseworker testified that Mother and Child have a positive, if inconsistent relationship. When Mother and Child visit, they play games on a tablet or phone and sometimes share a meal. We cannot equate a few warm visits with a well-adjusted child to a parental bond. Moreover, the question is not whether Child and Mother have a bond, but whether that bond is worth preserving.

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citing In *re K.K.R.–S.*, 958 A.2d 529, 535–536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *Id.,* 93 A.3d at 897-898; *see also In re T.D.*, 949 A.2d 910 (Pa.

Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *Id.* at 898 (citation omitted).

Here, the basis for the so-called bond was Mother's visitation with Child. While Mother had more expansive visitation in the past, by the end of the dependency case Mother could only be trusted with two, two-hour supervised visits per week. Even then, she often arrived late or would miss the visit completely. Meanwhile, the pre-adoptive foster parent was the one who met Child's daily needs, and who was the parent-figure that Child turned to for support and security. Thus, the trial court observed that even if Mother and Child had a bond, Child would not suffer irreparable harm if the bond was severed. We discern no abuse of discretion in the court's decision that DHS met its burden under the second prong of the termination analysis. Mother's final issue is without merit.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to Child pursuant to Section 2511(a)(2) and (b). Accordingly, we affirm the decree of the trial court.

Decree affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/23/2019*