J-S32032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.S.J., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.J., FATHER | : : : : : : : | |
| | : | No. 779 EDA 2020 |

Appeal from the Order Entered February 19, 2020,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s):  CP-51-AP-0000347-2019.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED JULY 24, 2020**

In this matter, Appellant J.J. (Father) appeals from the order involuntarily terminating his parental rights to his two-year-old daughter M.S.J. (Child) pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

The trial court summarized the pertinent factual and procedural history in its opinion:

> [Child] has been in care continuously for approximately two and a half years. [The Philadelphia Department of Human Services (DHS)] initially became involved with this family when Child tested positive for cocaine.  An Order of Protective Custody (OPC) was subsequently obtained due to the positive drug screen and concerns regarding Mother's lack of housing and [the presence of] domestic violence.  In

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother consented to the termination of her parental rights, and thus is not a party to this appeal.

September 2017, [Child] was adjudicated dependent and committed to DHS because [Child] was "without proper care or control, subsistence, education as required by law or other care or control necessary for his physical, mental, or emotional health or morals." Based on those concerns Fred Anderson, the Community Umbrella Agency (CUA) case manager supervisor, testified that his agency established a single case plan objectives for Father [to accomplish reunification].

On May 7, 2019, DHS filed petitions to involuntarily terminate Father's parental rights to [Child] pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) and to change [Child's] permanency goal to adoption. [The trial court] conducted a combined termination and goal change hearing (TPR hearing) on February 19, 2020. At the hearing, Mr. Anderson testified that Father's single case plan objectives were as follows: (1) attend Menergy, a domestic violence program; (2) attend ARC for housing and employment; (3) attend visitation. Regarding Father's compliance with his objectives, Mr. Anderson testified that Father only attended one session of Menergy in two and a half years. Additionally, Father never completed housing at the ARC and did not have housing at the time of the TPR hearing.

Father was offered supervised visits with [Child] but hadn't been consistently visiting. Lauren Wade, the visitation coach, testified that Father attended four of fifteen offered visits between November 2019 and February 2020. Ms. Wade testified that Father had cancelled several visits at the last minute or failed to attend after confirming several times, including the Friday prior to the TPR hearing. With respect to the bond between [Child] and Father, Ms. Wade indicated that there was very minimum contact between them at visits. She clarified that Father does not verbally engage with [Child] and she has never heard [Child] speak. Ms. Wade also testified that [Child] does not appear to be bonded with Father. Additionally, Ms. Wade testified that Father does not appear bonded with [Child.] Ms. Wade also stated that [Child] shows no emotion towards Father. The foster parent is the one who meets all of [Child's] general and medical needs. Additionally, Child's foster parent testified that [Child] calls her ["]mom["] and has never asked for Father. [Child's] foster parent also testified that [Child] is very talkative and animated at home.

- 2 -

Based on the foregoing testimony, [the trial court] issued a decree involuntarily terminating Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and finding, in accordance with 23 Pa.C.S.A. § 2511(b), that such termination best serves the developmental, physical and emotional needs and welfare of [Child.] Father filed a timely notice of appeal on March 3, 2020 along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)[.]

Trial Court Opinion (T.C.O.), 4/23/20, at 1-3 (citations to the record omitted).

Father presents one issue for our review:

Did the trial court err and/or abuse its discretion by terminating the parental rights of Father pursuant to 23 Pa.C.S.A. § 2511(b) where DHS failed to prove by clear and convincing evidence that involuntarily terminating his parental rights best served the emotional needs and welfare of [Child]?

Father's Brief at 5.

We begin our discussion mindful of our well-settled standard of review in termination cases:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

In this case, the court terminated Father's parental rights pursuant to subsections 2511(a)(1) (2), (5), (8), and (b).  Father does not challenge the trial court's conclusions that termination was warranted under Section 2511(a), thereby conceding the first prong of the termination analysis. Rather, he focuses his appeal on the second prong under Section 2511(b). That section provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) ... or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

- 4 -

> which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

In the context of the Section 2511(b) analysis, "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010). The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. ***Id***. Still, the ultimate concern is the needs and welfare of a child.

We have explained:

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parent's rights would destroy something in existence that is necessary and beneficial.

***Matter of M.P.***, 204 A.3d 976, 984 (Pa. Super. 2019) (citing ***Z.P.***, 994 A.2d at 1121).

Lastly, where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. ***See M.P.***, 204 A.3d at 984 (citing ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011)).

Instantly, Father's argument on appeal pertains exclusively to the bond question, notwithstanding the fact that the bond issue is only one aspect of the Section 2511(b) analysis. **See** Father's Brief at 8-9. Specifically, Father contends that the court erred when it determined there was no bond between Father and Child. The court made its determination based, in part, on the testimony of Ms. Wade, the visitation coach tasked with supervising visits between Father and Child. Ms. Wade explained that while Father attended the visits with snacks and entertainment, he and Child often sat together in silence and watched videos on his phone. Father argues that the court did not give enough appreciation to the fact that Child was very anti-social, and needed a speech therapist with her social and language skills. He concludes that Child's desire to sit quietly on Father's lap while they engaged in an hour-long visitation is indicative of a bond.

We conclude Father's argument lacks merit. Child spent three days in Father's care before she was removed by court order. She proceeded to spend the following 32 months with her pre-adoptive foster parent at which point the court held the termination hearing. Father never obtained reunification, and in fact, requested a paternity test approximately a year into the dependency proceedings. Throughout the dependency case, Father was inconsistent with his visitations with Child, attending just four appointments of the fifteen offered in the three months prior to the termination hearing. Although Father was apparently very pleasant to Child, Child did not consider him to be a source of parental care. For instance, if Father reached down to

- 6 -

hug Child, Child would walk off and go to Ms. Wade without acknowledging Father. Ms. Wade testified that she never heard Child speak a word during the visits. According to the foster parent, Child is actually animated and talkative when she is inside her comfort zone, but she shuts down and becomes non-communitive when she is outside of it. That Child can sit patiently on Father's lap for an hour is not a testament to their bond, but to the efforts of the foster parent who provided her with vital developmental care. Moreover, and perhaps more importantly, Father misses the point of the bonding inquiry. The question is not whether a parental bond exists, but whether one is worth preserving. As Father has never provided parental care to Child, the answer to this question is self-evident. Based on the foregoing, the court did not abuse its discretion in determining that no bond exists, much less one worth preserving.

Thus, we conclude that the trial court did not err or commit an abuse of discretion by finding involuntary termination of Father's rights was warranted under Section 2511(b) of the Adoption Act.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/20

- 7 -