J-A27011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1443 EDA 2021 |

Appeal from the Order Entered July 9, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0003351-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: H.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1444 EDA 2021 |

Appeal from the Order Entered July 9, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000020-2020

BEFORE:  PANELLA, P.J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED FEBRUARY 28, 2022**

The trial court entered an order involuntarily terminating H.H.'s parental rights to A.F. ("Child") on May 18, 2021. That same day, the trial court entered an order changing Child's permanency goal to adoption. Counsel did not file a timely notice of appeal from either of those orders but did file a motion seeking to appeal them *nunc pro tunc*. The trial court denied that motion on July 7,

2021. Counsel eventually filed an amended notice of appeal from the order denying the *nunc pro tunc* motion, which is the appeal now before us. We affirm the trial court's order denying H.H's motion to appeal *nunc pro tunc*. However, given the unusual circumstances of this case, we also reviewed the record - which we supplemented - to determine if it supports the trial court's termination of H.H.'s parental rights and change of Child's goal to adoption. It does.

We glean the following facts from what is a very sparse record. Child was born in February 2017, but his birth certificate only identified biological mother ("Mother") as his parent. In December 2017, the Philadelphia Department of Human Services ("DHS") removed Child and his two older siblings from the home of Mother after Mother left the children, all under four years of age at the time, unsupervised overnight. Child was adjudicated dependent in March 2018. Child has been with the same foster parents since he was approximately eleven months old.

In June 2018, a paternity test showed the biological father of the two older siblings was not the biological father of Child. A May 14, 2019 permanency review order recounted that Mother had identified H.H. as Child's biological father, and that H.H. was currently incarcerated. Current counsel was appointed to represent H.H. on May 14, 2019.

On January 9, 2020, DHS filed a petition to terminate the parental rights of Mother and H.H. to Child, as well as a petition to change Child's permanency

goal to adoption. The trial court held a hearing on the petitions on November 12, 2020, at which time counsel for H.H. represented that H.H. denied paternity and wanted a paternity test. The court ordered the paternity test and continued the matter as to H.H. The trial court held the hearing on the petition to terminate Mother's parental rights, and Mother's parental rights to Child were terminated following the hearing.

In March 2021, H.H. took a paternity test and the test showed he was Child's biological father. On May 18, 2021, the trial court held a virtual hearing on the petition to terminate H.H.'s parental rights and to change Child's goal to adoption. At the conclusion of the hearing, the court entered an order terminating H.H.'s parental rights to Child and an order granting the petition to change Child's goal to adoption. Both orders were docketed on May 18, 2021.

Counsel for H.H. did not file a timely notice of appeal from the May 18, 2021 orders terminating H.H.'s parental rights and changing Child's goal to adoption. Instead, on June 27, 2021, counsel filed a motion with the trial court to appeal those orders *nunc pro tunc.* In that motion, counsel reported H.H. had been incarcerated at all relevant times. Counsel asserted he had spoken to H.H. seven days after the termination hearing while H.H. was in prison, and H.H. indicated at that time that he wished to file an appeal. Counsel stated, however, he told H.H. that the court and his practice required H.H. to submit a request to appeal in writing. Counsel averred H.H. did not do so, and counsel

therefore did not file a timely appeal. Having apparently reconsidered his belief that a written request was required, counsel was now asking the court to allow H.H. to file an appeal *nunc pro tunc*.

The trial court denied the motion to appeal *nunc pro tunc* on July 9, 2021. On July 22, 2021, counsel for H.H. filed a notice of appeal in each docket, one for goal change and one for termination, stating H.H. was appealing the May 18, 2021 order. He attached a "statement re no transcript," averring there had been no verbatim recording of the proceedings. As required by Pa.R.A.P. 905(2), counsel also attached a Pa.R.A.P. 1925(b) statement of errors complained of on appeal to the notices of appeal. The 1925(b) statement, however, only raised alleged errors related to the trial court's denial of the motion to appeal *nunc pro tunc.* The statement did not raise any issues challenging the May 18, 2021 termination or goal-change order.

This Court issued a rule to show cause, asking counsel to clarify exactly which order H.H. sought to appeal. We noted that while each notice of appeal identified the order being appealed as the May 18, 2021 order, and that any such notice of appeal from that order would be untimely, the arguments in the 1925(b) statement only challenged the trial court's July 9, 2021 order denying *nunc pro tunc* relief. Counsel for H.H. filed a response on August 12, 2021. In the response, counsel stated he had inadvertently put the date of the order H.H sought to appeal as May 18, 2021, when H.H. was, in fact,

- 4 -

seeking to appeal the July 9, 2021 order denying the motion to appeal *nunc pro tunc*.

Counsel filed an amended notice of appeal with this Court on August 13, 2021, and the amended notice of appeal identified the order being appealed as the July 9, 2021 order. This Court issued an order that same day, directing the Prothonotary to accept the amended notice of appeal which clarified the appeal was being taken from the July 9, 2021 order denying *nunc pro tunc* relief.

In his appellate brief, counsel for H.H. argues the trial court violated H.H.'s constitutional rights by not granting H.H.'s motion to appeal the May 18, 2021 termination and goal-change orders *nunc pro tunc*. In doing so, counsel essentially alleges his own ineffectiveness as it relates to his failure to file an appeal from the May 18, 2021 orders despite H.H.'s request that he do so. He appears to argue that by not granting the *nunc pro tunc* motion, the trial court violated both H.H.'s constitutionally-protected rights to the effective assistance to counsel as well as to parent Child. This claim offers no basis for relief.

When this Court reviews a trial court's order denying a motion to allow an appeal *nunc pro tunc*, we look to see only whether the trial court abused its discretion. *See Raheem v. University of the Arts,* 872 A.2d 1232, 1234 (Pa. Super. 2005). "An abuse of discretion is not merely an error of judgment but is found where the law is 'overridden or misapplied, or the judgment

exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown by the evidence or the record.'" ***Id.*** (citation omitted).

We are not persuaded the trial court abused its discretion here. While the trial court recognized the *nunc pro tunc* motion "alleged H.H.'s counsel did not file an appeal because counsel did not receive a written request from H.H.," Trial Court Opinion, 8/16/21, at 1, the court also explained H.H. had failed to demonstrate that he was entitled to *nunc pro tunc* relief. Specifically, the court stated H.H. had

> not shown he was impeded from filing a [notice of appeal] due to (1) the occurrence of fraud or a breakdown in the court's operations[;] or (2) that the notice of appeal was filed late as a result of non-negligent circumstances, either as they relate to [H.H. or his] counsel; (3) [H.H.] filed the notice of appeal shortly after the expiration date; and (4) the appellee was not prejudiced by the delay. [***See***] ***Criss v. Wise***, 781 A.2d 1156, 1159 (Pa. [ ] 2001).

Trial Court Opinion, 8/16/21, at 3.

While H.H. appears to challenge the applicability of this standard to termination of parental rights cases, this is the standard this Court has continued to apply to such cases. ***See In re Adoption of W.R.***, 823 A.2d 1013, 1015-1016 (Pa. Super. 2003); ***In re M.S.K.,*** 936 A.2d 103, 105-106 (Pa. Super. 2007). Applying that standard, H.H. has simply failed to show the trial court abused its discretion by determining that H.H. was not entitled to *nunc pro tunc* relief. He has not alleged, much less demonstrated, there was fraud or a breakdown in the court's operations, there were non-negligent circumstances surrounding the late filing, or that DHS, which supports Child's

adoption, was not prejudiced by the delay. We are therefore constrained to affirm the trial court's order denying *nunc pro tunc* relief.

Nonetheless, we recognize the unusual circumstances of this case, and those circumstances lead us to the conclusion that the interests of justice compel us to review the record to determine whether the trial court properly terminated H.H.'s parental rights and changed Child's permanency goal to adoption. **Accord Matter of M.P.**, 204 A.3d 976, 981 (Pa. Super. 2019) (recognizing and resolving a mother's substantive issues challenging orders terminating her parental rights and changing child's permanency goal to adoption even though the Court was required to quash the mother's notices of appeal to those orders).

The problem that follows, joining the many created by counsel's underwhelming representation, is that counsel filed a "statement re no transcript" along with his original notice of appeal filed on July 22, 2021. In that statement, counsel averred there was no verbatim record of "the proceedings" and that he had, therefore, not ordered a transcript. Given that it was unclear which order H.H. sought to appeal in his July 22, 2021 notice of appeal, it is also not entirely clear which "proceedings" counsel was referring to in his "statement re no transcript" - any proceedings related to the denial of his *nunc pro tunc* motion or the proceedings related to the

termination of his parental rights.[1] The end result is that the record, as presented to this Court on appeal, did not have a transcript of the May 18, 2021 hearing regarding the termination of H.H's parental rights.

Upon informal inquiry, our Prothonotary was apprised there had been a verbatim recording of the May 18, 2021 termination/goal change hearing, but it had never been transcribed. In response to the inquiry, the notes of testimony from the hearing were transcribed, and subsequently forwarded to this Court and made a part of the record.

After reviewing those notes of testimony, we have no difficulty concluding the trial court did not err by terminating H.H.'s parental rights. When reviewing an order terminating parental rights, we must accept the findings of fact and credibility determinations of the trial court as long as the record supports them. **See In the Interest of D.R.-W.**, 227 A.3d 905, 911 (Pa. Super. 2020). If the findings of fact are supported by the record, this Court may only reverse the order if the trial court made an error of law or abused its discretion. **See id**. The trial court, as the fact-finder, is free to believe all, part or none of the evidence presented and is likewise free to resolve any conflicts in the evidence. **See id**.

---

[1] We add that Pa.R.A.P. 1923 governs statements in the absence of a transcript. The rule provides, in relevant part, that if no report of the proceedings at a hearing was made, the appellant may prepare a statement of the proceedings from the best available means, including his recollection. Counsel did not do so here.

Termination of parental rights is controlled by Section 2511 of the Adoption Act. **See** 23 Pa.C.S.A. § 2511. Under Section 2511, a trial court must engage in a bifurcated process prior to terminating parental rights. **See In re L.M**., 923 A.2d 505, 511 (Pa. Super. 2007). Initially, the trial court must find that the party seeking termination has proven by clear and convincing evidence that the parent's conduct satisfies any one of the eleven statutory grounds set forth for termination under Section 2511 (a). **See id.**; 23 Pa. C.S.A. § 2511 (a)(1-11). If the trial court finds that one of those subsections has been satisfied, it must then, pursuant to Section 2511(b), make a determination of the needs and the welfare of the child under the best interests of the child standard. **See In re L.M.**, 923 A.2d at 511; 23 Pa.C.S.A. § 2511(b).

Here, regarding the first prong of the analysis, the trial court found DHS had proven by clear and convincing evidence that H.H.'s conduct met the grounds for termination of his parental rights under Sections 2511 (a)(1), (a)(2), (a)(5) and (a)(8). This Court has made clear we only need to agree with the trial court that DHS met its burden as to any one subsection in order to affirm the termination of parental rights. **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we conclude the trial court correctly determined DHS met its burden pursuant to Section 2511 (a)(1), which provides that parental rights may involuntarily be terminated on the grounds that:

The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa. C.S.A. § 2511(a)(1).

In defining what constitutes parental duties, this Court has stated:

Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. ... [Rather,] the parental obligation is a positive duty which requires affirmative performance … A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles. … Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [their needs].

*In re Z.P.*, 994 A.2d 1108, 1118-1119 (Pa. Super. 2010) (citation omitted)

Here, the record supports the trial court's conclusion that H.H. failed to ever perform any parental duties as it relates to Child, including for at least a six-month period prior to the filing of the termination petition. The testimony at the May 18, 2021 hearing plainly supports such a finding.

To that end, Carolyn Smith, the Community Umbrella Agency ("CUA") caseworker assigned to Child, testified CUA learned of H.H., *i.e.* that Mother had named H.H. as Child's father, in May 2019 and also learned that H.H. was incarcerated at that time. *See* N.T. Termination/Goal Change Hearing, 5/18/21, at 10-11. Smith stated she attempted to reach out to H.H. multiple times, both by reaching out to the social worker at the prison and sending letters to the prison and to H.H.'s last known home address. *See id.* at 11,

13. She reported she had also physically gone out to that address in an attempt to contact H.H. *See id.* at 14. Despite her efforts, Smith testified she was never able to get in contact with H.H. *See id.* at 17.

Smith further testified H.H. has been incarcerated on and off for the past three years. *See id.* at 11. According to Smith, it was her understanding that H.H. had planned to voluntarily relinquish his parental rights to Child, but then changed his mind. *See id.* at 12. She testified H.H. has played no role in Child's life and Child did not even know H.H. *See id.* at 11, 12. She added Child "has had no interaction with [H.H.]." *Id.* at 15.

H.H. also testified at the hearing. He stated he was currently incarcerated and awaiting trial in two separate cases, having been arrested for the second crime while he was on house arrest for the first. *See id.* at 19, 25. He testified he was put in prison after being arrested for the second crime, and had been in prison consecutively for the past two and one-half years. *See id.* at 22, 25. He maintained it was his counsel who told him about Child, that Mother never told him about Child and, referring to another child he had with Mother who Mother allegedly did not tell H.H. about, this is "the second time [Mother] did this." *See id.* at 21, 24.

H.H. testified he never got any letters about Child while in prison because they had a problem getting mail in prison. *See id.* at 20. He conceded the home address Smith sent letters to, as well as physically visited, was his grandmother's and the house where he lived while on house arrest. *See id.*

at 25. He maintained he was never told about any goal change petitions that were delivered to his grandmother's house, and he suggested that his grandmother would not have gotten them because she was never home and may have even moved. ***See id.*** at 26. At the same time, H.H. conceded that, once he learned of Child, he never reached out to the caseworker or anyone to try to become involved in Child's life. ***See id.*** at 21. He confirmed he's never seen Child and that Child does not know him. ***See id.*** at 22, 27.

Following the hearing, the trial court stated on the record that it found Smith's testimony credible, and H.H.'s testimony not credible. ***See id.*** at 38. It then terminated H.H.'s parental rights, explaining:

> [T]his father has abandoned his parental control by his own actions. He's a career criminal. And it's not enough for him to promise to do better to regain parental control in the future. It's just not going to happen. And there's no reasonable way that it could happen absent him walking out of jail, finding a job, finding a house. It's not happening. He hasn't been in this child's life for four years.
>
> ***
>
> His parental duties, the parental duties for this child are being performed by the foster parents and not the father. They never have been. And this child needs stability and continuity in [his] life. So, the people that are offering that yesterday, today, and in the future will be the foster parents.

***Id.*** at 39-40.

There is no sense in belaboring the point that, clearly, the record supports the trial court's determination that H.H.'s rights were properly terminated pursuant to Section 2511(a)(1). While incarceration alone cannot

- 12 -

form a basis for the termination of parental rights, "[a]n incarcerated parent desiring to retain parental rights must exert him[self] to take and maintain a place of importance in the child's life." ***In re R.I.S.*** 36 A.3d 567, 573 (Pa. 2011). There is no evidence H.H. did that here or that he holds a place of importance in Child's life.

The trial court also found that terminating H.H.'s parental rights to Child would best serve Child's needs and welfare, as required by Section 2511(b). This finding is also supported by the record.

"Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). In determining a child's needs and welfare, the trial court is required to consider "whatever bonds may exist between the children and [the natural parent], as well as the emotional effect that termination will have upon the [child]." ***In re Adoption of A.C.H.***, 803 A.2d 224, 229 (Pa. Super. 2002) (citation omitted). At the same time, the court should also consider the intangibles, such as the "love, comfort, security, and stability," the child might have with the foster parent. ***In re K.Z.S.***, 946 A.2d 753, 760 (Pa. Super. 2008) (citation omitted).

Here, Smith testified Child has been with his current foster family for the past three years, since Child was eleven months old. ***See*** N.T. Termination/Goal Change Hearing, 5/18/21, at 9-10. Child calls his foster mother "mom" and his foster father "dad," and they wish to adopt Child. ***See***

- 13 -

*id.* at 10, 13. He is bonded with them. ***See id.*** at 10. Again, Smith testified Child has had no interaction or involvement with H.H. whatsoever, and that Child would not be irreparably harmed if H.H.'s parental rights were terminated. ***See id.*** at 10, 12.[2]

The child advocate for Child also testified that it would be in the best interests of Child to have H.H.'s rights terminated as Child "doesn't know [H.H.] at all." ***Id.*** at 15. The advocate testified Child's foster home is an adoptive resource and his foster parents are the only parents Child has ever known. ***See id.*** at 15. Child's guardian *ad litem* added that "it's in [Child's] best interest to remain in this adoptive home. And that's just a matter of common sense. … There's absolutely no evidence before this Court that [H.H.] had any contact with [Child]. " ***Id.*** at 36

Based on this testimony, it is clear Child has no bond with H.H., as he does not even know who H.H. is. It is also clear Child is bonded to his foster parents, the only parents he has ever known. As such, the record amply supports the trial court's decision to terminate H.H.'s parental rights, as well as its order granting the petition to change H.H.'s goal to adoption. ***See In re***

_____

[2] Smith also testified at the hearing on November 12, 2020, and the trial court incorporated the notes of testimony from that hearing into the record. At the November 12, 2020 hearing, Smith reported Child's foster home was a pre-adoptive home. Smith testified it was her opinion that Child shares his primary parent-child bond with the foster parents, the foster parents meet all of Child's medical and developmental needs, and the foster parents provide Child with love, safety, stability and support. ***See*** N.T. Hearing Volume I, 11/12/20, at 33.

*R.I.S.*, 36 A.3d at 573 (stating that when reviewing a trial court's goal-change determination, an appellate court must defer to the discretion of the trial court and the trial court must be guided by the best interests of the child when making that determination).

In sum, we affirm the trial court's order denying H.H.'s motion to appeal the termination and goal change orders *nunc pro tunc*. Further, our review of the dependency and termination proceedings reveals no error or abuse of discretion in the order that terminated H.H.'s parental rights and changed Child's goal to adoption.

Order denying *nunc pro tunc* relief affirmed.

Judge Lazarus joins the memorandum.

Judge Dubow did not participate in the consideration.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2022