J-S37017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.C.-L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1710 EDA 2022 |

Appeal from the Order Entered June 24, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000222-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.G.C.-L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1712 EDA 2022 |

Appeal from the Decree Entered June 24, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000712-2021

BEFORE:  BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 08, 2022**

A.C. (Mother) appeals from the order and decree,[1] entered in the Court of Common Pleas of Philadelphia, changing the permanency goal to adoption and involuntarily terminating her parental rights to her minor daughter,

---

[1] On August 2, 2022, this Court *sua sponte* consolidated Mother's appeals at 1710 EDA 2022 and 1712 EDA 2022.  **See**  Pa.R.A.P. 513; Pa.R.A.P. 2138.

A.G.C.-L. (Child) (born 1/2019).[2]  Counsel has filed a petition for leave to withdraw as counsel, pursuant to **Anders v. California**, 386 U.S. 738 (1967). **See In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992) (extending **Anders** briefing criteria to appeals by indigent parents represented by court-appointed counsel in involuntary termination of parental rights matters).  After careful review, we affirm and grant counsel's petition.

Child was born with a rare medical condition known as congenital gastroschisis.[3]  Just days after Child's birth, the Philadelphia Department of Human Services (DHS) received a general protective services (GPS) report indicating that Child had medical problems and that Mother was unable to care for Child.  Specifically, Mother presented with a history of mental health and substance abuse issues and lacked the proper resources to care for Child.[4]

_____

[2] Mother has filed one notice of appeal for each lower court docket (dependency and adoption) in compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which held that "in future cases [Pa.R.A.P.] 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed.  The failure to do so will result in quashal of the appeal." **Id.** at 977.  **See also In re M.P.**, 204 A.3d 976 (Pa. Super. 2019) (applying **Walker** holding in termination of parental rights/goal change appeal).

[3] Congenital gastroschisis is a rare condition, present at birth, that occurs when a baby's intestines extend outside of the body through a hole next to the belly button. https://rarediseases.info.nih.gov/diseases/8661/gastroschisis (last visited 11/7/22).

[4] Just days after Child's birth, DHS learned that one of Mother's seven other children, a two-year old daughter, has an open case with North Carolina welfare authorities and that a petition to terminate Mother's parental rights
*(Footnote Continued Next Page)*

After Child's birth, but before Child was discharged from the hospital, DHS determined that Mother's living situation was not appropriate for a baby and informed Mother that she needed to find new housing or a caregiver resource for Child.

On February 7, 2019, Child was discharged from the hospital; DHS obtained an order of protective custody for Child and Child was placed in a medical foster home. On February 13, 2019, Catholic Social Services (CSS) developed a single case plan (SCP) for Mother, with the following objectives: (1) complete substance abuse assessment and comply with recommendations; (2) obtain mental health services and follow any recommendations; (3) undergo three random drug screenings at CEU; (4) obtain and maintain stable housing; (5) obtain and maintain employment; (6) attend parenting education and demonstrate learned skills; and (7) attend and comply with court-ordered visitation schedule. On March 12, 2019, following a hearing, Child was adjudicated dependent due to lack of parental care or control. *See* 42 Pa.C.S.A. § 6302.

In September 2019, when Child was only eight months old, Mother decided to move to North Carolina. While residing in North Carolina, Mother was moderately to substantially compliant with her objectives and sporadically

---

with regard to that daughter is pending due to Mother's extensive drug and alcohol abuse issue, transience, and refusal to receive therapy and visit with the child.

Additionally, there is a history of domestic violence between Mother and Father dating back to 2017. Father is not involved in this appeal.

visited with Child, who remained in foster care in Pennsylvania. Permanency and status hearings were held consistently from June 2019 through October 2021.

At the conclusion of a July 15, 2021 permanency hearing, the court ordered that Child remain in foster placement and continue monthly in-person and weekly virtual visits with Mother. N.T. Permanency Hearing, 7/15/21, at 60. The trial judge noted at the hearing that Mother had tested negative for drugs and alcohol and had been attending narcotics anonymous, albeit on an inconsistent basis. *Id.* At an October 21, 2021 permanency hearing, Mother admitted that she had "kind of slacked a little bit on [her] visits with [Child]." N.T. Permanency Hearing, 10/21/21, at 27. Mother also indicated that she "honestly [just] want[s] to be in California with [her] dad's family." *Id.* At the time of the hearing, Mother had resigned from her job at Amazon and was looking for housing. *Id.* at 26, 28. At the conclusion of the hearing, the trial judge found Mother to be minimally compliant with her objectives and to have minimally progressed toward the goal of reunification. *Id.* at 32.

On November 24, 2021, DHS filed a petition to terminate Mother's parental rights, indicating that reunification of Mother with Child was not a viable permanency option where Mother has failed to achieve her SCP objectives and where adoption is in Child's best interest as she is in a loving and safe foster family environment.[5]

---

[5] Mother moved to Florida in February of 2022.

On June 24, 2022, the trial court held a goal change/termination hearing[6] at which DHS Caseworker Kimberly Davis, Community Umbrella Agency (CUA) Case Manager Janelle McDowell, CUA Case Manager Torr Robinson, and Mother participated. The court entered an order changing Child's permanency goal to adoption and a decree terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2) (5), (8), and (b) of the Adoption Act.[7]

Mother filed timely notices of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 14, 2022, counsel filed a petition for leave to withdraw as counsel pursuant to **Anders**. In **V.E.**, **supra**, our Court stated:

> Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition this court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal. Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, the court holds that appointed counsel seeking to withdraw representation must submit an **Anders** brief.

**V.E.**, 611 A.2d at 1275. Moreover, we held that "any motion to withdraw representation, submitted by appointed counsel, must be accompanied by an

---

[6] The trial court incorporated the testimony from the July 15, 2021 and October 21, 2021 permanency hearings into the record at the termination hearing. **See** N.T. Termination Hearing, 6/24/22, at 75.

[7] 23 Pa.C.S.A. §§ 2101-2938.

advocate's brief, and not the *amicus curiae* brief delineated in [*Commonwealth v.*]*McClendon*, [434 A.2d 1185 (Pa. 1981)]. ***See also In re Adoption of R.I.***, 312 A.3d 601, 602 (Pa. 1973) ("[T]he logic behind . . . an individual in a criminal case being entitled to representation by counsel at any proceeding that may lead to 'the deprivation of substantial rights'[,] . . . is equally applicable to a case involving an indigent parent faced with the loss of her child.").

In her ***Anders*** brief,[8] counsel presents the following issues for our review:

> (1) The Philadelphia Department of Human Services failed to prove by clear and convincing evidence that [M]other's parental rights should have been terminated[,] pursuant to 23 Pa.C.S.[A.] §[§] 2511 (a)(1),(2), (5) and (8)[,] since she had substantially completed her single case plan objectives as required to have [C]hild returned to her.
>
> (2) There was a strong emotional and parental bond between [M]other and [C]hild which would have had a negative effect on [C]hild if the parental bond was permanently severed.
>
> (3) The trial court erred when it changed the permanency goal from reunification to adoption.

***Anders*** Brief, at 5.[9]

_____

[8] DHS and Child's guardian *ad litem* did not file briefs in the matter.

[9] Child was represented by Amanda Green, Esquire, who functioned as both guardian *ad litem* and as child advocate, at the goal change/termination hearing. ***See*** 23 Pa.C.S.[A.] § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and ***In re K.R.***, 200 A.3d 969 (Pa. Super. 2018) (en banc), ***but see In Re: T.S., E.S.***, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best
*(Footnote Continued Next Page)*

Before reaching the merits of Mother's appeal, we must first address counsel's petition to withdraw. To withdraw under **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.[10]

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of **Anders**—that counsel inform the appellant of [] her rights in light of counsel's withdrawal—this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to their client advising [] her of [her] rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

An **Anders** brief must also comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

[10] Mother has not raised any additional arguments on appeal.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Instantly, Mother's counsel filed an application to withdraw, certifying that she reviewed the record and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Mother, and counsel's assessment of why those issues are wholly frivolous, with citations to relevant legal authority. Counsel has also provided Mother with a copy of the brief and a letter advising her of her right to retain new counsel or raise additional issues *pro se*. Accordingly, we find that counsel has substantially complied with the requirements of *Anders* and *Santiago*, and, thus, we may review the issues raised by counsel and also conduct our independent review of the record. *See Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007) (counsel must substantially comply with requirements of *Anders*).

Our standard of review in termination of parental rights cases is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

At the time of the termination hearing, Child had been in foster care for over three years. N.T. Termination Hearing, 6/24/22, at 39. Mother moved to North Carolina in 2019, when Child was less than one year old. Since Child's placement, Mother has inconsistently participated in court-ordered mental health services, failed to complete a psychiatric assessment, and has never provided proof of stable housing or employment.[11] Mother was not currently engaged in mental health treatment at the time of the termination hearing. *Id.* at 24-46, 68.

CUA Case Manager McDowell testified that at the time she managed Mother's case (Nov. 2021-June 2022) there was "no real bond between Mother and Child," *id.* at 46, as Mother and Child had only had virtual visits and "Mom had missed a few months of virtual visits prior to [McDowell] being . . . on the case." *Id.* CUA Case Manager Robinson testified that reunification was no longer an appropriate placement goal due to Mother's outstanding SCP goals and that adoption is appropriate because Child has a bond with her pre-adoptive foster family who meets Child's basic needs, provides her with a safe

---

[11] Mother, however, testified at the termination hearing that she is "temporarily employed as a housekeeper," *id.* at 68, but that she had not informed her CUA case worker of the job. *Id.* Mother also testified at the termination hearing that on the following Monday she "was starting [part-time work] at a law firm." *Id.*

environment, and under whose care Child is thriving. *Id.* at 58-59. Case Manager Robinson also testified that terminating Mother's parental rights is in Child's best interest where there is no existing parent-child bond, Mother is still not in a position to care for Child, Child has a "good supportive system around her," and Child is thriving in her foster home. *Id.* at 60.

After our review, we conclude that the trial court's findings of fact and credibility determinations are supported by the record. *In re T.S.M.*, *supra*. We also find that the trial court did not make an error of law or abuse its discretion involuntarily terminating Mother's parental rights to Child under section 2511(a)(1).[12] *Id.* Mother is simply unable to provide the parental care necessary for Child's well-being. She has yet to attain verifiably suitable housing and employment or engage in court-ordered mental health treatment. In addition, termination is proper under section 2511(b). *See* N.T. Termination Hearing, 6/24/22, at 92-98. Case managers testified that there is no real bond between Mother and Child where, since birth, Child has been out of Mother's care and has lived almost exclusively in another state, and Mother has infrequently visited Child in person and only sporadically attended virtual visits. *See In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (where no evidence of parent-child bond, reasonable to infer no bond exists).

---

[12] We can affirm the trial court's decision regarding the termination of parental rights with regard to any singular subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

- 10 -

Moreover, Child is thriving in her current pre-adoptive foster home[13] where she is getting the stability and safety she needs. **_In re T.S.M._**, **_supra_** at 269 ("Common sense dictates that courts considering termination must also consider whether the [Child is] in a pre-adoptive home and whether they have a bond with their foster parents.").

Under such circumstances we agree with the trial court that terminating Mother's parental rights best serve Child's developmental, physical and emotional needs. **_In re C.M.S._**, 884 A.2d 1284, 1287 (Pa. Super. 2005). Finally, our independent review of the record discloses no other arguably meritorious issues that counsel, intentionally or not, missed or misstated. **_Flowers_**, **_supra_**.

Order[14] and decree affirmed. Petition to withdraw granted. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *12/8/2022*

---

[13] Child transitioned from a medical foster home to her current, pre-adoptive foster home a few months before the termination hearing.

[14] Given our decision to affirm the trial court's termination decree, any challenge to the goal change order is moot. **_See Interest of D.R.-W._**, 227 A.3d 905, 917 (Pa. Super. 2020).