J-S21001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS: J.I.A, A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: U.S.A., JR., FATHER | : : : : : | |
| | : | No. 182 MDA 2023 |

Appeal from the Decree Entered January 9, 2023
In the Court of Common Pleas of Lebanon County Orphans' Court at
No(s):  2022-01046

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF: U.T.A., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: U.S.A., JR., FATHER | : : : : : | |
| | : | No. 183 MDA 2023 |

Appeal from the Order Entered January 9, 2023
In the Court of Common Pleas of Lebanon County Orphans' Court at
No(s):  2022-01047

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: AUGUST 9, 2023**

U.S.A., Jr. ("Father") appeals the January 9, 2023 decrees that involuntarily terminated his parental rights to his biological sons, J.I.A., born in June 2009, and U.T.A., born in March 2011.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

We glean the factual and procedural history of this matter from the certified record, which the orphans' court has aptly summarized, as follows:[1]

> C.LS. ("Mother") is the natural mother of J.I.A., U.T.A., and D.M.M. Father is the biological father of U.T.A. and J.I.A., while [t]he father of D.M.M. is unknown . . . .
>
> [Lebanon County Children and Youth Services ("CYS" or "the agency")] first became involved with the family on August 16, 2020, due to Mother's substance use and mental health behavior issues. . . . [In connection with these allegations], Mother signed over guardianship of J.I.A. and U.T.A. to S.M., a family friend. The agency opened a case for all of the children in November 2020. At that time, Father was [living apart from the family in New York and] Mother's whereabouts were unknown . . . .
>
> [In January 2021,] concerns arose about [S.M.'s] suspected drug use, home conditions, and that [she] refused to drug test when requested. The agency requested emergency custody of U.T.A. on January 26, 2021[, which was granted the same day.] U.T.A. was adjudicated dependent on February 8, 2021. [At this time, Father's whereabouts were unknown to the agency, although he was suspected to be in New York with Mother.]
>
> Thereafter, during the summer of 2021, the agency received reports that J.I.A. was back in Pennsylvania at the maternal grandmother's home; however, the agency could not confirm these reports. Father and Mother alleged that J.I.A. was in New York with a relative. The relative, however, denied having J.I.A[.]
>
> The agency located J.I.A. at his football game on September 17, 2021. The same day, the agency was awarded emergency custody of J.I.A. He was placed into a kinship foster home with his football coaches[.] On November 29, 2021, J.I.A. was adjudicated dependent[.]

Orphans' Court Opinion, 3/3/23, at 4-5 (cleaned up).

_____

[1] On January 9, 2023, the orphans' court also terminated Mother's parental rights to, *inter alia*, J.I.A. and U.T.A. She has appealed those determinations at 222 and 223 MDA 2023, which we have addressed in a separate writing.

The orphans' court initially established a permanency goal of reunification with respect to U.T.A. and J.I.A. Father was assigned numerous objectives including, *inter alia*, obtaining suitable housing, finding stable employment, submitting to regular drug tests, obtaining a drug and alcohol assessment, and participating in visits with U.T.A. and J.I.A. **See** N.T., 1/9/23, at 21-22; **see also** CYS Exhibit 3 (permanency plan for J.I.A.), CYS Exhibit 4 (permanency plan for U.T.A.), CYS Exhibit 5 (permanency plan for D.M.M.). Father was most recently incarcerated in approximately April 2022. In August 2022, he received a sentence of eighteen months to seven years of imprisonment. **See** N.T., 1/9/23, at 21, 24, 34, 63-65.

On December 20, 2022, the agency filed petitions seeking to, *inter alia*, involuntarily terminate Father's parental rights.[2] On January 9, 2023, the court held a termination hearing, at which point U.T.A. had been in placement for approximately twenty-four months while J.I.A. had been in placement for approximately sixteen months. At the hearing, the agency adduced testimony from CYS foster care supervisor Angelica Farrisi. Father testified on his own behalf. The same day as the hearing, the orphans' court entered decrees

---

[2] On December 20, 2022, the orphans' court appointed a guardian *ad litem* and separate legal counsel to represent, respectively, the best interests and the legal interests of, *inter alia*, U.T.A. and J.I.A. **See** 23 Pa.C.S. § 2313(a). Legal counsel has filed a brief in this Court advocating that the orphans' court's termination decrees be affirmed.

involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

On February 1, 2023, Father filed separate, timely notices of appeal along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(1)(i) and (b). On appeal, this Court *sua sponte* consolidated the above-captioned cases pursuant to Pa.R.A.P. 513.

Father has raised two claims for our consideration:

A.    Whether the [orphans'] court committed an error of law and/or abused its discretion by terminating the parental rights of [Father]?

B.    Whether the [orphans'] court committed an error of law and/or abused its discretion in finding the termination of parental rights [was proper pursuant to] 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8) as to J.I.A. and U.T.A.?

Father's brief at 4.

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. Where the orphans' court's factual findings are supported by the evidence, an appellate court may not disturb the orphans' court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial

courts, who often observe the parties first-hand across multiple hearings.

> In considering a petition to terminate parental rights, the orphans' court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by 23 Pa.C.S. § 2511 of the Adoption Act, which necessitates a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination pursuant to § 2511(a)(1)-(11). *Id*. at 830. If the orphans' court determines that a petitioner has established grounds for termination under at least one of these subsections by "clear and convincing evidence," the court then assesses the petition under 23 Pa.C.S. § 2511(b), which focuses upon the child's developmental, physical and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court "need only agree with any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm the termination of parental rights." *T.S.M.*, *supra* at 267.

In the instant case, the orphans' court found that termination was appropriate pursuant to § 2511(a)(1), (2), (5), and (8). However, we need only agree with one such subsection, in addition to § 2511(b), in order to

affirm involuntary termination. Thus, our analysis in this proceeding implicates § 2511(a)(2) and (b), which provides as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

Pursuant to section 2511(a)(2), the party petitioning for termination of parental rights must establish: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa.Super.

2021) (citing 23 Pa.C.S.A. § 2511(a)(2)). Grounds sufficient for termination under section 2511(a)(2) are not limited to affirmative misconduct but may also concern parental incapacity that cannot be remedied. *Id*.

If a petitioner establishes adequate grounds for termination pursuant to § 2511(a), the court turns to § 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). "Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, ___ A.3d ___, 2023 WL 4092986 at *13 (Pa. June 21, 2023). This determination "should not be applied mechanically," but "must be made on a case-by-case basis," wherein "the court must determine each child's specific needs." *Id*. at *14. Accordingly, as our Supreme Court has recently explained, there is no "exhaustive list" of factors that must be considered in this context. *Id*. at *18 n.28.

Since its holding in *In re E.M.*, 620 A.2d 481 (Pa. 1993), our Supreme Court has mandated that a court's § 2511(b) analysis must include "consideration of the emotional bonds between the parent and child." *T.S.M.*, *supra* at 267. Thus, the court must determine whether the "trauma" caused by sundering the parent-child bond is "outweighed by the benefit of moving the child toward a permanent home." *Id*. at 253 (cleaned up). Specifically, the recognized threshold for this finding is that the court must determine

whether termination will sever a "necessary and beneficial relationship," such that the child "could suffer extreme emotional consequences." ***K.T.***, ***supra*** at *16. Our Supreme Court has emphasized, however, that such consequences must constitute more than mere proof of "an adverse or detrimental impact from severance of the parental bond" in order to preclude termination. ***Id***. at *18. Thus, "courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's 'feelings' or 'affection' for the parent, which even badly abused and neglected children will retain." ***Id***. at *16 (citing ***T.S.M.***, ***supra*** at 267).

Our case law reflects that a court's analysis pursuant to § 2511(b) is not narrow but must include consideration of "intangibles such as love, comfort, security, and stability." ***T.S.M.***, ***supra*** at 267. Indeed, our Supreme Court has affirmed that "the parental bond is but one part of the overall subsection (b) analysis." ***K.T.***, ***supra*** at *18. Thus, "courts must not only consider the child's bond with the biological parent, but also examine the . . . love, comfort, security, and stability the child might have with the **foster** parent." ***K.T.***, ***supra*** at *17 (cleaned up; emphasis in original). Our Supreme Court has noted that Pennsylvania courts should also consider, where appropriate due to the particular facts of a case, related factors such as: (1) the child's need for permanency and length of time in foster care; (2) whether the child is in a pre-adoptive home and bonded with foster parents; and (3) whether the foster home meets the child's needs. ***Id***. at *18.

With these overarching legal principles in mind, we turn to Father's arguments. Although framed as separate issues, Father's brief contains only a unitary argument that collectively addresses the orphans' court's findings pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). *Cf.* Pa.R.A.P. 2116(a), 2119(a). We discern that Father is arguing that the orphans' court inappropriately relied solely upon the fact of his incarceration to terminate his parental rights. *See* Father's brief at 13-14.

While Father argues that the orphans' court inappropriately focused upon his incarceration in rendering this decision, our Supreme Court's jurisprudence indicates otherwise:

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)

*In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012). This Court has also explained:

> Each case of an incarcerated parent facing termination must be analyzed on its own facts, keeping in mind . . . that the child's need for consistent parental care and stability cannot be put aside or put on hold[.] Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. Rather, a parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*Interest of K.M.W.*, 238 A.3d 465, 474 (Pa.Super. 2020) (cleaned up).

We emphasize that Father has been an absent parent in the lives of U.T.A. and J.I.A. *See* N.T., 1/9/23, at 61. Indeed, by his own admission, Father lived completely apart from the family in New York from at least September 2019 until February 2021. *Id*. In addition to this period of voluntary absence, Father has been sporadically imprisoned during the agency's involvement with the family. *Id*. at 61-62, 67-68. The exact periods of, and reasons for, Father's various terms of confinement are not entirely clear from the certified record. However, his most recent term of incarceration began in April 2022 and, ultimately, he received a sentence of eighteen months to seven years with no release date yet set. *See* N.T., 1/9/23, at 21, 24, 34, 63-65. Whether imprisoned or free, however, the orphans' court found that Father demonstrated a continued incapacity in that he has either refused, or been unable, to maintain verifiable housing, obtain employment, undergo mental health and drug and alcohol evaluations, or participate in visits with his sons. *See* Orphans' Court Opinion, 3/3/23, at 22. The orphans' court concomitantly found that these incapacities had deprived U.T.A. and J.I.A. of essential parental care and subsistence. *Id*. Finally, the orphans' court concluded that Father's incapacities would not be remedied. *Id*.

Our review of the record reveals full support for the court's findings. Ms. Farrisi testified that Father has never maintained appropriate housing or employment during the course of the agency's involvement with the family.

*See* N.T., 1/9/23, at 37. She also testified that Father failed to obtain either a mental health evaluation or a drug and alcohol evaluation. *Id*. at 25-26. Ms. Farrisi's testimony similarly reflected that Father was only able to participate in one supervised visit with U.T.A. or J.I.A. during their placements, *i.e.*, for periods of twenty-four and sixteen months, respectively. *Id*. at 21, 24, 34. Indeed, there is no indication in the record that Father has ever provided any relevant parental care or subsistence to U.T.A. and J.I.A.

Finally, competent evidence supports the orphans' court's determination that Father would not, or could not, remedy his incapacities. Even prior to his imprisonment, Ms. Farrisi reported that Father was evasive and non-cooperative with the agency. *Id*. at 21-26, 34-37. Father has now been incarcerated since April 2022 and is currently serving a sentence with a maximum term of seven years. *Id*. at 63. Furthermore, as of the termination hearing in January 2023, U.T.A. was approximately eleven years old and had been in placement for two years, while J.I.A. was approximately thirteen years old and had been in placement for sixteen months. Forcing U.T.A. and J.I.A. to wait for Father's release at some future, uncertain date would essentially hold what little remains of their childhood ransom to an eventuality that may never come to fruition. *See In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's . . . hope for the future."). Instantly, Father's repeated and continued incapacity due to his

incarceration has caused U.T.A. and J.I.A. to be without essential parental care, control, and subsistence necessary for their physical or mental well-being. *See S.P.*, *supra* at 830 ("A parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties." (cleaned up)).

Based on the foregoing, we find no abuse of discretion or error of law in the orphans' court's conclusion that involuntary termination of Father's parental rights was appropriate pursuant to 23 Pa.C.S. § 2511(a)(2).

Father has advanced no colorable argument concerning § 2511(b). The statute is neither cited nor discussed with particularity in his brief to this Court. *See* Father's brief at 7-16. We note that "[i]t is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority." *In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa.Super. 2017). On this ground, alone, we could find that Father has waived any claim regarding the orphans' court's holding pursuant to § 2511(b). *Id*. at 466 n.3 (disapproving of a requirement that this Court should address § 2511(b) "even where the appellant has made no effort to present a challenge regarding that section").

Nevertheless, in an abundance of caution, we review the orphans' court's needs and welfare analysis. In terminating Father's parental rights, the orphans' court found that: (1) no parental bond existed between Father and either U.T.A. or J.I.A.; and (2) the involuntary termination of Father's

parental rights would serve the developmental, physical and emotional needs and welfare of J.I.A. and U.T.A., particularly with respect to affording them permanency and stability. *See* Orphans' Court Opinion, 3/3/23, at 27-28. The evidence of record supports these conclusions.

As detailed above, the record establishes that Father's only contact with U.T.A. and J.I.A. during this time period have been a single supervised visitation and occasional letters, which were not well-received by U.T.A. or J.I.A. *Id*. at 21, 24, 33-34. He has been largely absent from his sons' lives and U.T.A. and J.I.A. have not expressed a desire to have continued contact with him. *Id*. at 72. Overall, we find ample support for the court's conclusion that no parental bond exists. *See Matter of M.P.*, 204 A.3d 976, 984 (Pa.Super. 2019) ("Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists.").

Furthermore, Ms. Farrisi reported that U.T.A. and J.I.A. are thriving in their respective placements and are bonded with their pre-adoptive foster families. *See* N.T., 1/9/23, at 20-21. She also averred that J.I.A.'s and U.T.A.'s need for stability and permanency would be best served by terminating Father's parental rights. *Id*. at 40. Her conclusion on this point is further buttressed by the long duration of the respective placements of each child in this matter. *Id*. at 21, 34. Accordingly, the orphans' court's conclusions with respect to § 2511(b) are supported by sufficient evidence.

Based upon the review conducted above, we discern no abuse of discretion or error law in the orphans' court's holding.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2023