J-S01019-19

2019 PA Super 55

IN THE MATTER OF: M.P., A MINOR  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
:
APPEAL OF: S.L., MOTHER  :
:
:
:
:
:
:
:  No. 1371 MDA 2018

Appeal from the Decree Entered July 20, 2018
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  42-AD-2018,
43-AD-2018, CP-22-DP-295-2016,
CP-22-DP-296-2016

IN THE MATTER OF: M.P., A MINOR  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
APPEAL OF: S.L., MOTHER  :
:
:
:
:
:
:
:  No. 1372 MDA 2018

Appeal from the Order Dated July 20, 2018
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  42-AD-2018,
43-AD-2018, CP-22-DP-0000295-2016,
CP-22-DP-0000296-2016

BEFORE:   PANELLA, P.J., MURRAY, J., and PELLEGRINI*, J.

OPINION BY MURRAY, J.:        **FILED FEBRUARY 22, 2019**

      S.L. (Mother) appeals from the decrees involuntarily terminating her

parental rights to her minor children, Ma.P. (born July 2011) and M.P. (born

January 2013) (collectively Children), pursuant to 23 Pa.C.S.A. § 2511(a)(2),

_____

* Retired Senior Judge assigned to the Superior Court.

(5), (8) and (b) of the Adoption Act.[1]  Mother also appeals from the orders entered the same day, which changed Children's permanency goal from reunification to adoption pursuant to 42 Pa.C.S.A. § 6351.  Mindful of our Supreme Court's directive in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and upon careful consideration, we affirm the trial court, and with this decision, remind, advise and emphasize to all litigants who seek appellate review with this Court – whether in criminal, civil or family cases – that **Walker** is the law of the Commonwealth, and shall be applied prospectively and uniformly by this Court.

### Facts

Instantly, Dauphin County Social Services for Children and Youth (the Agency) became involved with Mother and Children in November 2016, after receiving a report that Mother had delivered a stillborn child and used drugs prior to delivery.  **See** N.T., 7/19/18, at 8-13.  While Mother was still hospitalized, Children were removed from the home and placed in kinship foster care with a maternal aunt and uncle.  **Id.**

On January 18, 2017, Children were adjudicated dependent.  Over the next year, Mother remained noncompliant with her parenting objectives. Accordingly, on April 26, 2018, the Agency petitioned to terminate Mother's parental rights and change Children's permanency goal from reunification to

---

[1] The court also terminated the parental rights of B.P., the father of Ma.P., and J.H., the father of M.P.  B.P. filed an appeal and we address his issues in a separate memorandum docketed at 1373 MDA 2018.  J.H. has not appealed.

adoption. The court convened a hearing on the petitions on July 19, 2018. Children were represented by counsel, as guardian *ad litem* and legal counsel. Mother, represented by counsel, testified on her own behalf.

At the conclusion of testimony, the court terminated Mother's parental rights and changed Children's permanency goal to adoption. N.T., 7/19/18, at 96-102. On August 17, 2018, Mother timely appealed and complied with Pa.R.A.P. 1925(a)(2)(i) and (b). Mother filed two notices of appeal – one for each child – challenging the court's termination of Mother's parental rights and the change of permanency goal to adoption.

### *Commonwealth v. Walker*

As mandated by ***Walker***, we address the fact that Mother filed a single notice of appeal for each child, with separate issues – termination and goal change – that relate to two different docket numbers. The Official Note to Rule 341 of the Pennsylvania Rules of Appellate Procedure provides in relevant part:

> Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed. ***Commonwealth v. C.M.K.***, 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

Pa.R.A.P. 341, Official Note.

Until recently, it was common practice for courts of this Commonwealth to allow appeals to proceed, even if they failed to comply with Pa.R.A.P. 341.

> While our Supreme Court recognized that the practice of appealing multiple orders in a single appeal is discouraged under Pa.R.A.P. 512 (joint appeals), it previously determined that "appellate courts have not generally quashed [such] appeals, provided that the issues involved are nearly identical, no objection to the appeal has been raised, and the period for appeal has expired." **K.H. v. J.R.**, 826 A.2d 863, 870 (Pa. 2003) (citation omitted).

**In the Interest of: P.S.**, 158 A.3d 643, 648 (Pa. Super. 2017) (footnote omitted).

However, on June 1, 2018, our Supreme Court in **Walker** held that the practice violated Pennsylvania Rule of Appellate Procedure 341, and the failure to file separate notices of appeal for separate dockets **must** result in quashal of the appeal. **See Walker**, 185 A.3d at 977. The Court stated unequivocally: "The Official Note to Rule 341 provides a bright-line mandatory instruction to practitioners to file separate notices of appeal. . . . The failure to do so requires the appellate court to quash the appeal." **Id.** at 976-77.

Because the mandate in the Official Note was contrary to "decades of case law from this Court and the intermediate appellate courts," the **Walker** Court announced that its holding would apply prospectively only. **Id.** at 977. Accordingly, **Walker** applies to appeals filed after June 1, 2018, the date **Walker** was filed. **Id.**

Mother's notices of appeal were filed on August 17, 2018. Although the court addressed the merits of Mother's issues in its Rule 1925(a) opinion, our Supreme Court requires "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The

- 4 -

failure to do so will result in quashal of the appeal." *Id.* It appears that Mother attempted to comply with *Walker*'s mandate by filing separate notices of appeal for each child. However, she failed to file separate notices of appeal for her discrete challenges to the termination decree and goal change for each child. Thus, because Mother filed her notices of appeal from two separate dockets (dependency and adoption), *Walker* compels quashal.[2]

To the extent decisional law may have been unclear to this point, we further recognize the two substantive issues Mother presents for review:

> 1. Did the trial court abuse its discretion, or commit an error of law in changing the goal for the children from reunification to adoption?
>
> 2. Did the trial court abuse its discretion, or commit an error of law in terminating [Mother's] parental rights?

Mother's Brief at 9.

---

[2] We recognize the harsh – perhaps draconian – consequence of quashing any appeal, and in particular an appeal involving a party's parental rights. However, our role as an intermediate appellate court is clear. "It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." *Moses v. T.N.T. Red Star Exp.*, 725 A.2d 792, 801 (Pa. Super. 1999). It is well-settled that "the Superior Court is an error correcting court and we are obliged to apply the decisional law as determined by the Supreme Court of Pennsylvania." *Commonwealth v. Montini*, 712 A.2d 761, 769 (Pa. Super. 1998).

**Termination**

With regard to the termination of Mother's parental rights:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). As the Agency argues that it proved by clear and convincing evidence that grounds for termination existed under 23 Pa.C.S.A. § 2511(a)(2), we focus our analysis on subsection (a)(2) and (b).

The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern

parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

The essence of Mother's argument is that her parental rights should not have been terminated because she was "addressing the issues," including her drug, alcohol, and mental health issues. *See* Mother's Brief at 12, 22-23. This argument lacks merit.

The court primarily analyzed the evidence under Section (a)(8), but also stated that it found clear and convincing evidence to terminate under Section (a)(2). *See* Trial Court Opinion, 10/3/18, at 10-11. The court explained:

> although Mother complied with some of the objectives, she had failed to demonstrate sustained commitment caring for Children and recovery from her drug addiction. In spite of the services made available to her, she has yielded to devastating drug abuse. As a result, she lacks employment and a suitable home for Children.

*Id.* at 11.

The record supports the trial court's determination. Children were originally placed into care in November 2016 as a result of Mother's drug addiction, and failure to prevent the father of one of the Children from giving both Children marijuana-laced cookies. When M.P. was diagnosed with acute myeloid leukemia, Mother was uninvolved in M.P.'s care, such that the Agency had to obtain a court order for consent to M.P.'s medical treatment. While M.P. was hospitalized, Mother visited a total of 60 times during the 160 days

M.P. was hospitalized; again, a court order was required to prevent Mother from arriving at times disruptive to M.P.'s care.

Initially, Mother was non-compliant with her drug treatment. She was discharged from one program in August 2017 for lack of attendance and submitted a total of 31 drug screens, 26 of which were positive for drugs or alcohol. At the time of the hearing, Mother had accrued new criminal charges which remained unresolved. Although there was evidence that Mother had been compliant as of December 2017 and was making progress with drug and alcohol treatment, her recovery was new and fragile. As Mother herself testified, she was unable to seek employment because she was focused on her recovery, and she resided in a halfway house where Children could not join her. This Court has stated that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). Accordingly, we discern no error in the court's finding that competent, clear, and convincing evidence supported the termination of Mother's parental rights pursuant to Section 2511(a)(2), based upon Mother's continued incapacity – her long history of addiction, lack of timely compliance with parental objectives, and accrual of new criminal charges – that resulted in Children being without essential parental care, the cause of which "cannot or will not be remedied." *See Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

Next, we consider Children's needs and welfare pursuant to subsection (b). *See Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have explained:

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parent's rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have

proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Again, Mother makes a general argument of trial court error in asserting that the best interests of Children were not served by the termination of her parental rights. *See* Mother's Brief at 23. Mother does not discuss her bond with Children, or Children's needs and welfare. Accordingly, she risks waiver. *See In re Adoption of R.K.Y.*, 72 A.3d 669, 679 n.4 (Pa. Super. 2013) (declining to address subsection 2511(b) where the appellant did not make an argument concerning that subsection).

Further, no evidence was introduced to show a parental bond between Children and Mother beyond Mother's testimony that Children loved her. *See*, *e.g.*, *K.Z.S.*, 946 A.2d at 763. Here, the court observed:

> We do not doubt that Mother loves her children. However, we see no evidence of a bond with Mother which, if broken, would cause detriment to them. Mother visited gravely ill M.P. only sporadically. Mother failed to maintain communication with the Agency and Hershey Medical Center to address urgent requests for M.P.'s leukemia treatment. Mother failed to visit Ma.P. regularly.
>
> We recognize that Mother seeks additional time within which to pursue drug treatment and demonstrate the ability to care for the children. However, a continued lack of permanency with the potential of removal from a capable and loving home would be contrary to their best interests . . .
>
> Children have resided with the kinship foster family since November 2016. In that home they have received the love, care, and attention needed to address all of their needs. Their bond with the foster parents is evidenced by their happiness and

- 11 -

affection toward the foster parents. Significantly, Foster Mother took a leave of absence from her employment to ensure she could stay with M.P. during her hospitalization. Foster Mother has returned to work, but takes time off as needed to take M.P. to follow-up doctor's appointments. The kinship foster parents have provided all of the devotion and stability Children require and deserve.

Trial Court Opinion, 10/3/18, at 12-13 (citations to the record omitted).

We discern no abuse of discretion in the court's conclusions. Clear and convincing evidence supports the court's termination of Mother's parental rights under Sections 2511(a)(2), as well as the court's Section 2511(b) findings as to Children's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763.

**Goal Change**

Mother also challenges the Children's goal change to adoption.

The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015). We thus review this claim for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

Regarding the disposition of dependent children, the Juvenile Act, 42 Pa.C.S.A. §§ 6351(e)-(g), provides the criteria for a permanency plan. The court must determine a disposition best suited to the safety and protection,

as well as the physical, mental, and moral welfare of children. *See* 42

Pa.C.S.A. § 6351(g). In considering a petition for goal change, the court:

> considers the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In Interest of A.N.P.*, 155 A.3d 55, 67 (Pa. Super. 2017) (quoting *In re*

*A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007).

> In addition:

> When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. Moreover, although preserving the unity of the family is a purpose of the [Juvenile] Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child."

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some citations omitted).

Mother's argument regarding goal change is not clear, although she

appears to allege that the Agency did not provide appropriate or sufficient

reunification services. *See* Mother's Brief at 14-18. However, Mother also

concedes that the Agency had difficulty contacting Mother, and Mother was

still abusing drugs during that time period. *Id.* at 16-17. Nonetheless, Mother

claims that "very little was done to facilitate visits between Mother and the

Children," and her caseworker did not assist Mother in scheduling visits, ensuring that visits occurred, or "check on the quality of the visits that were occurring." *Id.* at 17-18.

Although Mother attempts to argue that appropriate reunification services were not provided, the record reflects otherwise. Mother was either non or minimally compliant with her family service plan objectives. While she completed some drug and alcohol and mental health counseling by the time of the final hearings, such efforts occurred after the Agency's extensive and unsuccessful efforts to get Mother treatment, and when Mother, on 26 occasions, tested positive for drugs.

Further, Mother had issues with visitation throughout the pendency of the case. It was Mother's responsibility, as one of her objectives, to apprise the Agency of her addresses, contact information, and whereabouts. She did not do so and admits that she was "difficult to contact." Mother's Brief at 16. As recently as May 2018, Mother had not given the Agency a forwarding address. When visitation was provided, Mother did not appear, or when she did, she caused strife. For example, when visiting the M.P. in the hospital, Mother had to be ordered to come at appropriate times because her presence disrupted M.P.'s ability to sleep. Mother did not visit with Ma.P., and when she did, her interactions with the foster family were acrimonious. After a bench warrant was issued for Mother's arrest, visitation was suspended.

At the time of the final permanency review hearing, Mother had not obtained employment, had not obtained stable housing, had accrued new criminal charges, and was not visiting with Children. These were Mother's service objectives. The record reveals that Mother was not compliant with her family service plan, made little progress towards alleviating the circumstances that had led to Children's placement, and showed no indication that the circumstances would be remedied in a reasonable amount of time. **See**, **e.g.**, **A.N.P.**, 155 A.3d at 67. Therefore, the court did not err in changing Children's permanency goal to adoption.

## Conclusion

After careful consideration, we affirm the trial court. We note that this ruling, like all of our rulings, may not be disposition-driven. We are bound by decisional and statutory legal authority, even when equitable considerations may compel a contrary result. We underscore our role as an intermediate appellate court, recognizing that "the Superior Court is an error correcting court and we are obliged to apply the decisional law as determined by the Supreme Court of Pennsylvania." **Commonwealth v. Montini**, 712 A.2d at 769. "It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." **Moses v. T.N.T. Red Star Exp.**, 725 A.2d at 801. Accordingly, we issue this decision with the following order.

## ORDER

AND NOW, it is ORDERED that all parties seeking review with the Superior Court shall file notices of appeal as mandated by Pennsylvania Rule of Appellate Procedure 341 and **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). Failure to comply will result in quashal of the appeal.

Termination and goal change affirmed. Jurisdiction relinquished.

P.J. Panella joins the Opinion.

Judge Pellegrini files a Concurring and Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2019

- 16 -