J-S35033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.G. AND A.G., MINOR CHILDREN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF S.G., MOTHER | : | No. 16 EDA 2019 |

Appeal from the Order Entered November 27, 2018
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-DP-0001841-2018,
CP-51-DP-0002147-2018

BEFORE:   OLSON, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 16, 2019**

S.G. (Mother) appeals from the orders entered November 27, 2018, which adjudicated dependent her minor daughters, A.G., born in August 2012, and H.G., born in April 2014 (collectively, Children).[1]  The orders also found that Mother committed child abuse against both Children.  Upon review, we quash this appeal.

We briefly summarize the facts and procedural history of this matter. The Philadelphia Department of Human Services (DHS) became involved with Children most recently[2] on August 5, 2018, when it received a child protective

_____

* Retired Senior Judge assigned to the Superior Court.

[1] A.G.'s putative father is P.F., while H.G.'s putative father is K.C.  Neither putative father appealed the juvenile court's orders.

[2] The Philadelphia Department of Human Services (DHS) has a lengthy history of involvement with this family dating back to 2013.  N.T., 11/27/2018, at 12. The record reveals that DHS was involved in 2014, because of Mother's history of suicide attempts and inpatient hospitalization, and a report that she "had intended to cut [A.G.'s] limbs off, black[en] both her eyes, [and] toss her

services report that Mother had injured H.G. while at the store. N.T., 11/27/2018, at 12-17, 32. The report indicated that Mother struck H.G. in the chest because Children were bickering. *Id.* After a brief pause, H.G. fell to the floor, "appeared to be unconscious," had blue lips, and had blood coming out of her mouth. *Id.* at 17-18. Mother sought medical attention for H.G., and an ambulance took her to the hospital. *Id.* at 20. During DHS's investigation of this incident, Mother admitted that she hit H.G. and made other statements consistent with the report. *Id.* at 21.

On August 7, 2018, DHS obtained emergency protective custody of H.G. The juvenile court entered a shelter care order on August 9, 2018, and DHS filed a dependency petition on August 20, 2018, at docket number CP-51-DP-0001841-2018. DHS then filed a dependency petition as to A.G. on September 20, 2018, at docket number CP-51-DP-0002147-2018, in which it averred that A.G. was residing with her maternal great aunt pursuant to a safety plan. DHS did not check the boxes on either of the petitions indicating that Children were victims of child abuse. However, both petitions alleged that Children were "dependent and/or abused pursuant to the Juvenile Act …

---

down the steps." *Id.* at 22. DHS received a subsequent child protective services report on June 25, 2018, but determined that the report was unfounded. *Id.* at 16. The report resulted from an incident during which Mother was "attempting to discipline [H.G.] with a belt on her body. As [H.G.] was moving to get away, she was struck in the face with the belt." *Id.* at 17.

J-S35033-19

and/or the Child Protective Services Law [(CPSL).]" Dependency Petition (H.G.), 8/20/2018, at ¶ 5; Dependency Petition (A.G.), 9/20/2018, at ¶ 5.

The juvenile court conducted a hearing on the dependency petitions on November 27, 2018, at which Mother appeared and received court-appointed counsel. That same day, the juvenile court entered orders adjudicating Children dependent and finding abuse as to both A.G. and H.G.[3, 4] Mother timely filed a single notice of appeal on December 27, 2018, along with a concise statement of errors complained of on appeal.

Prior to reviewing the merits of Mother's appeal, we must address whether she violated our Supreme Court's holding in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), by filing a single notice of appeal from two orders resolving issues relating to two different docket numbers.[5]

The Official Note to Pennsylvania Rule of Appellate Procedure 341 provides as follows:

_____

[3] Both orders included an identical provision, stating that the "Court makes a finding of [c]hild abuse as to Mother [S.G.]" Order of Adjudication and Disposition (H.G.), 11/27/2018, at 2; Order of Adjudication and Disposition (A.G.), 11/27/2018, at 2.

[4] The orders continued H.G.'s placement in foster care, and legally removed A.G. from Mother's care.

[5] On January 8, 2019, this Court issued a rule to show cause upon Mother to explain "why the above-captioned appeal should not be quashed in light of *Walker*." Order, 1/8/2019. Mother timely responded, averring that the orders appealed from are identical, involved the same appellant (Mother), and that the issues raised on appeal are identical for Children. On January 15, 2019, this Court deferred disposition to the merits panel.

- 3 -

> Where ... one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed. **Commonwealth v. C.M.K.**, 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

Pa.R.A.P. 341, Official Note.

> Recently, in **Walker**, our Supreme Court construed the above language as constituting "a bright-line mandatory instruction to practitioners to file separate notices of appeal." [185 A.3d] at 976-77. Therefore, the **Walker** Court held that "the proper practice under Rule 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket. The failure to do so requires the appellate court to quash the appeal." **Id**. at 977. The Court tempered its holding by making it prospective only, recognizing that "[t]he amendment to the Official Note to Rule 341 was contrary to decades of case law from this Court and the intermediate appellate courts that, while disapproving of the practice of failing to file multiple appeals, seldom quashed appeals as a result." **Id**. Accordingly, the **Walker** Court directed that "in future cases Rule 341 will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. <u>The failure to do so will result in quashal of the appeal</u>." **Id**. (emphasis added).

**C.T.E. v. D.S.E.**, __ A.3d __, 2019 WL 3369078, at *2 (Pa. Super. July 26, 2019).

"The **Walker** opinion was filed on June 1, 2018." **Id**.  Mother filed her appeal on December 27, 2018,[6] "well after **Walker** was issued.  In light of

---

[6] In **Matter of M.P.**, 204 A.3d 976 (Pa. Super. 2019), a panel of this Court declined to quash a mother's notices of appeal filed on August 17, 2018, in a termination-of-parental-rights case.  In that case, "[i]t appear[ed] that Mother

this fact, we are compelled to quash this appeal in accordance with Rule 341

and **Walker**." **Id**.

     Appeal quashed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/19

_____

attempted to comply with **Walker**'s mandate by filing separate notices of appeal for each child. However, she failed to file separate notices of appeal for her discrete challenges to the termination decree and goal change for each child." **Id**. at 981.  On appeal, this Court declined to quash the appeals because "decisional law may have been unclear to this point." **Id**.  Instantly, Mother did not even attempt **Walker** compliance.  Unlike **M.P.**, this appeal does not involve the termination of parental rights, or separate dockets relating to the **same** child (*i.e.* termination and dependency dockets); rather, this is a single appeal from separate dockets for different children. Accordingly, we decline to apply **M.P.** under these circumstances.