2023 PA Super 261

| | | |
|---|---|---|
| CHANEL GLOVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| NICOLE JUNIOR | : | |
| | : | |
| Appellee | : | No. 1369 EDA 2022 |

Appeal from the Order Entered May 4, 2022
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): D22048480

BEFORE: PANELLA, P.J., BOWES, J., OLSON, J., DUBOW, J., KUNSELMAN, J., MURRAY, J., McLAUGHLIN, J., KING, J., and McCAFFERY, J.

CONCURRING OPINION BY KING, J.:                    **FILED DECEMBER 11, 2023**

I agree with the Majority's holding that Junior[1] has a contract-based right to parentage based on the oral contract between Glover and Junior.[2] I write separately to emphasize my view that the facts of this case fit squarely within an "intent-based" parentage approach as contemplated by the concurring opinions in ***C.G. v. J.H.***, 648 Pa. 418, 193 A.3d 891 (2018). Nevertheless, our Supreme Court has declined to expressly adopt such an

_____

[1] Junior's preferred pronouns are "they/them." (***See*** Junior's Brief at 3). Thus, I will utilize Junior's preferred pronouns throughout this writing, in accordance with their gender identification.

[2] I also agree with the Majority's initial determinations that the trial court had jurisdiction to adjudicate Junior's petition for pre-birth establishment of parentage, and that the matter was ripe for review before Glover gave birth to Child. I further agree with the Majority that the marital presumption of parentage did not apply to the facts of this case where there is no longer an intact marriage to preserve.

approach when considering the parentage of children conceived through Assisted Reproductive Technology ("ART"). As I believe adoption of an intent-based approach is a task better left for our legislature or Supreme Court, I depart from the Majority's reliance on this doctrine as a basis for Junior's relief.

To me, the only contract establishing Junior's legal parentage in this case is the oral contract between the parties. The Majority convincingly describes how the elements of an oral contract were satisfied. (*See* Maj. Op. at 26-30). Nevertheless, I share the concern of Justice Wecht's concurring opinion in *C.G.* that "ART requires us to hypothesize other scenarios, cases in which an intent analysis would not foreclose a valid claim to parentage while a contract-based approach would." *C.G., supra* at 459, 193 A.3d at 915. While one could argue that any successful claim to parentage under an intent-based approach would necessarily evidence an oral contract to same, that may not always be the case. The Supreme Court noted in *C.G.* that it was "not tasked with defining the precise parameters of contracts regarding [ART]." *Id.* at 441 n.11, 193 A.3d at 904 n.11.

Rather than having to define or evaluate such parameters under a contract-based theory for relief, I believe that an intent-based approach is the proper lens from which courts can and should evaluate claims of legal parentage in the ART context. Our High Court declined to adopt such a standard in *C.G.*, however, because that "case [did] not present an opportunity for such recognition, as the trial court found as fact that the

parties did not mutually intend to conceive and raise a child, and the parties did not jointly participate in the process." *Id.* at 441 n.11, 193 A.3d at 904 n.11.

In this case, the Majority holds that the record supports a finding of "intent-based parentage." (Maj. Op. at 31). The Majority decides that such an approach offers Junior an avenue for relief, even if contract principles do not afford them relief. (*Id.*) I am inclined to agree with the Majority that this record contains ample evidence supporting parentage under an intent-based approach. But I reach a different conclusion because it is not this Court's function to create new law. As we have explained:

> We are bound by decisional and statutory legal authority, even when equitable considerations may compel a contrary result. We underscore our role as an intermediate appellate court, recognizing that the Superior Court is an error correcting court and we are obliged to apply the decisional law as determined by the Supreme Court of Pennsylvania. It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court.

*Matter of M.P.*, 204 A.3d 976, 986 (Pa.Super. 2019) (internal citations and quotation marks omitted).

In my view, the Majority's adoption of the intent-based approach as an alternative ground for relief exceeds our authority as an intermediate appellate court. *See id.* The Majority insists that this Court can review the "intent-based" approach to parentage as an issue of "first impression." (Maj. Op. at 33 n.11). The issue in this case is whether a non-biologically related

- 3 -

intended parent can claim legal parentage to a child conceived through ART. This issue is not one of first impression, as evidenced by **C.G.** and the other cases discussed in the Majority Opinion which make clear that parentage can be bestowed in this context under contract principles. To endorse the theory of intent-based parentage, we would essentially be expanding the already existing legal doctrines applied in this context. Although the Majority cites **Reber v. Reiss**, 42 A.3d 1131 (Pa.Super. 2012), *appeal denied*, 619 Pa. 680, 62 A.3d 380 (2012), I find that case to be distinguishable. There, this Court considered "the contested disposition of frozen pre-embryos in the event of divorce [as] an issue of first impression in Pennsylvania." **Id.** at 1134. While there were **no** cases in Pennsylvania providing any precedent for deciding that issue (such that this Court found guidance in the case law from our sister states), here, there is precedent in this Commonwealth for establishing parentage under the facts of this case—just not under an intent-based approach.

Further, our High Court confronted the possibility of an intent-based approach in **C.G.** but chose not to adopt such an approach in light of the facts of that case. Of course, the Court could have endorsed an intent-based analysis as an alternative avenue for relief to applying contract principles in these types of cases, even if the Court decided such an approach would not have afforded C.G. relief in that case. The Court declined to do so. Rather, the Court indicated that it "must await another case with different facts before

**we may properly consider the invitation to expand the definition of 'parent.'"** ***C.G., supra*** at 441 n.11, 193 A.3d at 904 n.11 (emphasis added). The Court later reiterated that it was "unnecessary at this time to **expand the definition** of parent or **endorse a new standard** under the facts before this Court." ***Id.*** at 443 n.13, 193 A.3d at 906 n.13 (emphasis added). Thus, I do not consider this issue one of "first impression" but an invitation to expand the already existing doctrines applicable in cases involving parentage where a child is conceived through ART. I repeat that "[s]uch is a province reserved to the Supreme Court." ***Matter of M.P., supra***.

Instead, I would urge the Supreme Court to take a close look at this case and decide whether our Commonwealth should employ an intent-based approach to determining parentage in cases involving ART. As the Majority observes, "this appeal is the paradigm of intent-based parentage in cases involving ART where the couple not only evidenced their mutual intent to conceive and raise the child, but they also participated jointly in the process of creating a new life." (Maj. Op. at 35). In his concurring opinion, Justice Wecht described ***C.G.*** as "a missed opportunity for this Court to address the role of intent in analyzing parental standing in ART cases." ***C.G., supra*** at 464, 193 A.3d at 918. The case before us should not serve as a similar "missed opportunity" for the Supreme Court to address the intent-based approach.

Accordingly, I concur in the result.

President Judge Panella and Judge Murray joined this Concurring Opinion.