J-S27030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF V.S.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S.T., FATHER | : | |
| | : | |
| | : | No. 1032 EDA 2024 |

Appeal from the Decree Entered March 7, 2024
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2023-A0128

BEFORE:   LAZARUS, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED NOVEMBER 5, 2024**

J.S.T. (Father) appeals from the decree terminating his parental rights to V.S.T. (Child).  Father argues that the orphans' court erred by concluding that S.F. (Mother) had established cause to permit Child's former stepfather M.N.A. (Petitioner) to adopt Child without Mother relinquishing her parental rights.  We vacate the orphans' court's order due to Petitioner's failure to satisfy the adoption requirements at 23 Pa.C.S. § 2512(b), or the "cause shown" exception thereto at 23 Pa.C.S. § 2901.

We adopt the orphans' court's summary of the underlying facts and procedural history of this matter.  **See** Orphans' Ct. Op., 4/29/24, at 1-5. Briefly, Child was born in 2009.  Father and Mother were never married and separated when Child was approximately one and one-half years old.  When

_____

[*] Retired Senior Judge assigned to the Superior Court.

Child was about two years old, Mother married Petitioner. For approximately seven years, Child lived with Mother and Petitioner. During her marriage to Petitioner, Mother gave birth to R.A., who is Petitioner's biological son and Child's younger half-brother (Brother).

Mother and Petitioner subsequently separated and were divorced in 2019, when Child was ten years old. Mother and Petitioner reached a custody agreement regarding Child and Brother. Since 2019, Petitioner has had primary physical custody of Child and Brother. Father has never sought custody of Child. Petitioner and Mother have never obtained a court order formalizing their custody arrangement.

In 2022, Mother married her current husband, C.F. Petitioner is engaged to his current fiancée, D.M., who resides with Petitioner, Child, and Brother.

On October 4, 2023, Petitioner filed a petition to adopt Child and a petition to involuntarily terminate Father's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1) and (b) of the Adoption Act.[1] Petitioner argued that there was cause to excuse the requirement that Mother relinquish her parental rights prior to Petitioner adopting Child. Father filed a motion to dismiss the petition to involuntarily terminate his parental rights, arguing that Petitioner had not shown the necessary cause. The orphans' court denied Father's motion to dismiss and deferred the issue of cause to a hearing on the petition.

_____

[1] 23 Pa.C.S. §§ 2101-2938.

- 2 -

The orphans' court conducted a hearing on the petition to involuntarily terminate Father's parental rights March 6, 2024. Father appeared at the hearing with counsel. Child was represented by Mary C. Pugh, Esq., who served both as Child's guardian *ad litem* (GAL) and as Child's legal counsel.[2]

Father, Petitioner, and Mother testified at the hearing. At the conclusion of the hearing, the orphans' court placed its findings of fact and conclusions of law on the record. On March 7, 2024,[3] the orphans' court entered a final decree terminating Father's parental rights to Child.

Father timely appealed and simultaneously filed a Pa.R.A.P. 1925(a)(2)(i) statement. The orphans' court issued a Rule 1925(a) opinion addressing Father's issues.

Father raises the following issue on appeal:

The [orphans'] court erred in finding that cause was shown that . . . Mother was not required to relinquish her parental rights under 23 [Pa.C.S.] § 2901 since 23 [Pa.C.S.] § 2711(a)(3) requires a

_____

[2] The orphans' court concluded that there was no conflict in the GAL's representation of Child's legal and best interests. **See** N.T., 3/6/24, at 164-65; **see also In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020) (stating that where a GAL was appointed to represent both a child's legal and best interests, appellate courts may review *sua sponte* "whether the orphans' court determined that the child's best interests and legal interests did not conflict").

[3] The decree at issue was dated March 6, 2024. However, the record reflects that the decree was not entered on the docket and mailed to the parties until the following day. **See** Pa.R.A.P. 108(a)(1) (providing that the date of entry of an order is the day the clerk of court mails or delivers copies of the order to the parties); Pa.O.C.R. 4.6. We have amended the caption accordingly.

parent to relinquish their own parental rights if they are not married to the adopter.

Father's Brief at 2 (some formatting altered).

Father argues that the orphans' court erred in concluding that Petitioner established cause, under Section 2901 of the Adoption Act, to excuse the requirement that Mother relinquish her parental rights before Petitioner can adopt Child. *Id.* at 6-10. Specifically, Father contends that in order to establish cause to excuse the relinquishment requirement, the adoptive parent must be part of a family unit with the child's legal parent. *Id.* at 9-10. Father asserts that the record established that "Mother has remarried and resides with her new husband as a distinct and separate family unit." *Id.* at 7. Father further claims that the orphans' court's finding that Mother and Petitioner "have a harmonious, friendly and mutually supportive co-parenting relationship" following their divorce "does not demonstrate the existence of an intact family unit." *Id.* at 9. Therefore, Father concludes that the orphans' court erred in its conclusion that cause had been established under Section 2901.[4]

Petitioner and the GAL reply that the orphans' court correctly found that Petitioner cannot marry Mother and that it is in Child's best interest to

_____

[4] We note that Father does not challenge the orphans' court's determination that termination of his parental rights was appropriate under 23 Pa.C.S. § 2511(a)(1) and (b).

- 4 -

formalize the relationship between Petitioner and Child. Petitioner's Brief at 17-19; GAL's Brief at 11-15.

Father's issue presents a pure question of law; therefore, our standard of review is *de novo* and our scope of review is plenary. **See In re Adoption of M.E.L.**, 298 A.3d 118, 124 (Pa. 2023) (explaining that "the question of whether a parent may demonstrate cause to permit an adoption by" someone who is not a parent's spouse "is a pure question of law" (citation omitted)).

Additionally, to the extent that Father's appeal challenges the orphans' court's exercise of discretion in its analysis of Section 2901 of the Adoption Act, we review for an abuse of discretion. **See In re Adoption of J.M.B.**, 308 A.3d 1262, 1267 (Pa. Super. 2024).

Our standard of review for an abuse of discretion is well settled:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re H.H.N.**, 296 A.3d 1258, 1263 (Pa. Super 2023) (citation omitted).

Further, our Supreme Court has explained:

Because a termination petition filed by one parent against the other must occur in the context of an anticipated adoption,[5] and because adoption is a statutory right, we note that the parent seeking termination must strictly comply with all pertinent provisions of the Adoption Act in order for the adoption to be valid. While the Adoption Act provides that "[a]ny individual may become an adopting parent," 23 Pa.C.S. § 2312, relevant to the instant matter, Section 2711 of the Act requires the parent seeking termination to consent to the adoption and to relinquish his or her parental rights. *Id.* § 2711(a)(3) (requiring consent to adoption by the parent of an adoptee who is under 18 years of age); § 2711(d)(1) (setting forth contents of consent, including the statement "I understand that by signing this consent I indicate my intent to permanently give up all rights to this child"). Requiring parental consent to the adoption and the relinquishment of his or her parental rights permits the child and the adoptive parent or parents to establish a new parent-child relationship. Thus, where no new parent-child relationship is contemplated, the involuntary termination of parental rights is not permitted under the Adoption Act.

An exception to this relinquishment requirement exists, however, in second-parent adoption cases where the adopting party is the spouse of the parent seeking termination—that is, in the context of a stepparent adoption. Indeed, where the parent consents to an adoption of his child by his or her spouse—*i.e.*, the stepparent—the consenting parent is permitted to retain his or her parental rights. *See* 23 Pa.C.S. § 2903. ("Whenever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding.").

*In re Adoption of M.R.D.*, 145 A.3d 1117, 1120-21 (Pa. 2016) (some citations omitted and formatting altered).

---

[5] *See* 23 Pa.C.S. § 2512(b)(3) (explaining that a petition to involuntarily terminate parental rights "shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted").

Section 2901 of the Adoption Act provides an additional exception to the relinquishment requirement, and states:

> **Unless the court for cause shown determines otherwise**, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated, the investigation required by section 2535 (relating to investigation) has been completed, the report of the intermediary has been filed pursuant to section 2533 (relating to report of intermediary) and all other legal requirements have been met. . . .

23 Pa.C.S. § 2901 (emphasis added).

> In **M.E.L.**, our Supreme Court held that

> to satisfy the cause exception to relinquishment under Section 2901 two things must be established. A party must first show why he or she cannot meet the statutory requirements for adoption. This is consistent with the plain language of the statute, which provides that, "[u]nless the court for cause shown determines otherwise, no decree of adoption shall be entered **unless . . . all other legal requirements have been met**." 23 Pa.C.S. § 2901 (emphasis added). In both [**In re Adoption of R.B.F.**, 803 A.2d 1195 (Pa. 2002)] and **M.R.D.**, the parties seeking to adopt were legally unable to marry and, thus, could not satisfy the Act's marriage requirement. Upon this showing, the party may **then** appeal to the court's discretion by demonstrating with clear and convincing evidence why the purpose of Section 2711(d) would nevertheless be fulfilled or unnecessary in their case, despite the parties' inability to fulfill the statutory requirements.

**M.E.L.**, 298 A.3d at 127 (some formatting altered and emphases in original).

> In **M.R.D.**, our Supreme Court further explained that

> in second-parent adoption cases in which the relinquishment of a parent's rights is not required[,] *i.e.*, stepparent adoptions . . . relinquishment of the parent's rights is unnecessary, and indeed damaging. In such cases, the parent and the prospective adoptive parent are committed partners—that is, they are involved in a horizontal relationship, are equals as between each other, and are

- 7 -

equals with respect to the child. Adoption in such circumstances allows the prospective adoptive parent to create a new parent-child relationship with the legal parent's child and a family unit **together with** the co-parent to whom he or she is committed. Thus, because the legal parent and prospective parent in second-parent adoption cases are part of the same family unit, the relinquishment requirement undermines, rather than promotes, family stability.

*M.R.D.*, 145 A.3d at 1128 (emphasis in original).

Finally, the *J.M.B.* Court has stated that

when it comes to adoption law, the phrase "family unit" is a legal term of art. That term exists in the context of the relinquishment requirement, which reflects our General Assembly's clear goal of promoting adoptions by a spouse, in the context of an intact marriage, and "rooted in the belief that children benefit from permanency, the best indicator of which is to have children parented by two parents in a permanent relationship – a marriage." *M.E.L.*, 298 A.3d at 128. Of course, the Adoption Act anticipates there could be instances where the two adults in the "family unit" cannot get married, for whatever reason. The Act does not put form over substance by barring these individuals from adopting. Rather, the Act acknowledges that integrity and stability of their family unit might still warrant protection, even though the couple are unable to marry. Hence, the cause exception under Section 2901.

*J.M.B.*, 308 A.3d at 1271 (some citations omitted and some formatting altered).

In *M.R.D.*, the mother petitioned for termination of the father's parental rights and for maternal grandfather to adopt her children because the father had been estranged from the mother and the children for several years and the children's maternal grandfather had been very involved in the children's upbringing. *See M.R.D.*, 145 A.3d at 1118-19. Our Supreme Court concluded that the maternal grandfather's proposed adoption of the children did not

"foster a family unit" because the mother and the grandfather had "a vertical parent-child relationship" and would continue to reside in separate residences after the proposed adoption. *Id.* at 1128; *see also id.* at 1129 (stating that the mother and the maternal grandfather "have not demonstrated that the proposed co-parenting arrangement would create a new family unit or a new parent-child relationship" and that the maternal grandfather's "pre-existing and continuing close relationship with [the] children does not establish legal cause to excuse the requirement that [the] mother relinquish her parental rights under Section 2711 prior to the adoption" (footnote omitted and some formatting altered)). Therefore, the *M.R.D.* Court held that the proposed adoption could not proceed and that the mother and the maternal grandfather were precluded from seeking the involuntary termination of the father's parental rights. *See id.* at 1129-30.

In *J.M.B.*, the mother petitioned for the child's godmother to adopt the child. *See J.M.B.*, 308 A.3d at 1266. The father agreed to relinquish his parental rights, but the mother wished to retain her parental rights after the adoption. *See id.* at 1266, 1270 n.1. At a hearing before the orphans' court, the mother and the godmother established that they could not legally marry because the godmother was already married to the godfather. *See id.* at 1268; *see also* 18 Pa.C.S. § 4301 (criminalizing bigamy); 23 Pa.C.S. § 3304(a)(1) (providing that bigamy is grounds to annul a void marriage).

However, the mother, the godmother, and the godfather all testified that they were a "family unit," "one big family," and that "family is not always

blood." ***J.M.B.***, 308 A.3d at 1270-71 (citations omitted). Ultimately, the orphans' court found that the mother and the godmother had not established cause under Section 2901 because "[the] mother and [the] godmother had no intention of living together as a 'new family unit,' as contemplated by ***M.R.D.***" and denied the adoption petition. ***Id.*** at 1266, 1270 (citations omitted and some formatting altered).

On appeal, this Court observed that "the essential question is whether [the] mother's proposed adoption of the child by [the] godmother will promote a new parent-child relationship within a new family unit." ***Id.*** at 1269 (some formatting altered). The ***J.M.B.*** Court affirmed the denial of the adoption petition, explaining that the record supported the orphans' court's determination that the mother and the godmother are part of two separate family units[6] because they resided in separate households and did not have any "intention of combining their families under one roof and raising the child in one household." ***Id.*** at 1271 (some formatting altered).

The Court further explained:

> [The] mother nonetheless maintains that they are in a family unit, comparing their circumstances to that of a child with divorced parents. [The] mother reasons that the subject child would simply have two parents who live in separate homes. And like divorced parents, the subject child's prospective adoptive parent ([the]

_____

[6] The ***J.M.B.*** Court further stated it was "not disparag[ing] the assertion that [the] mother and [the] godmother are family. Nor do we define the outer parameters of what constitutes a family. We recognize the sentiment – indeed, the legal reality – that 'family is not always blood.'" ***J.M.B.***, 308 A.3d at 1271.

godmother) lives with her spouse and the daughter they share – not unlike a stepfamily. [The] mother's position is logical, but it does not conform with our Supreme Court's prior holdings. The High Court has made clear that the cause exception exists to protect **intact** family units. *See **M.R.D.***, 145 A.3d at 1128; ***M.E.L.***, 298 A.3d at 128. Neither the Court, nor the General Assembly, has broadened the cause exception to the extent that [the] mother advocates.

*Id.* (some formatting altered and emphasis in original).

Here, the orphans' court addressed the relinquishment of Mother's parental rights as follows:

In the case before this court, [Petitioner] was the step-father of [Child], and was married to the birth mother of [Child], from approximately 2011 to 2019. There is no question that, had [Petitioner] filed these petitions before the divorce in 2019, seeking to adopt [Child] as a step-father, and seeking to terminate the parental rights of [Father], he would have standing to adopt [Child]. During the period when [Petitioner] was married to [Mother], (2012-2019) the exception under the statute that permits a step-parent to adopt without his spouse relinquishing her parental rights would have applied, and he would clearly have been permitted to adopt without any requirement that [Mother] relinquish her parental rights.

As explained above, in 2019 [Mother] and [Petitioner] divorced, but amicably shared custody of both children: [Brother] (their child together) and [Child] . . . . Moreover, both children remained living full time with [Petitioner], in the home they all shared with [Petitioner's] parents, from 2019 through the present. Both [Petitioner] and [Mother] testified that their coparenting relationship is working well and that [Petitioner] functions day to day as the father of [Child], meeting all of his needs, emotional, physical and for food and clothing. Not only is the harmonious and mutually supportive family relationship among [Petitioner], [Mother] and [Child] remarkable, but both [Mother's] new husband (C.F.) and [Petitioner's] fiancée also support the continuation of this extended family relationship, and in particular, the continuation of the important parent-child relationship between [Petitioner] and [Child] that has existed since the child was approximately two years old.

- 11 -

\*   \*   \*

In this case, [Petitioner] and [Mother] have also satisfied this requirement.  They are divorced and they cannot now legally marry because [Mother] is married to someone else, C.F.  Thus there is a clear impediment to their remarriage.

Because an impediment to their remarriage has been established, this court may now consider whether to exercise its discretion, pursuant to Section 2901, "to grant an adoption petition in circumstances where, as in [**R.B.F.**], the party seeking adoption is unable to meet the statutory requirements for adoption, but has demonstrated cause for his or her noncompliance with those requirements."  **In re Adoption of M.E.L.**, 298 A.3d at 127 (citations [and emphases] omitted).

Based upon all of the evidence received at trial, this court concludes by clear and convincing evidence that [Petitioner] ha[s] satisfied this cause requirement, [Petitioner] has acted as a father to [Child] since he was approximately two years old.  He is now 15 years old.  [Petitioner] has lived with [Child] all those years, and is his primary parental figure.  [Petitioner] meets all of the child's needs, physical, emotional, educational and developmental.  [Petitioner] supports, helps and nurtures [Child] in every way -- assuring that he gets up every morning, gets ready for school, gets to school on time, eats his meals, has clean clothing, has a place to live and play and do his homework, and has a summer job.  To hear [Petitioner] describe [Child] is to listen to a proud and loving father.

\*   \*   \*

[Petitioner] has done all of these things without excluding the birth mother, [Mother], but welcoming [Mother] into his home and maintaining a collaborative relationship as co-parents to both [Child] and [Brother].

[Petitioner] . . . and [Mother] . . . have made the strongest possible case that [Child] deserves to have a continued parental relationship with both of them, and that this court should recognize that under the unusual (one hopes not unique) circumstances of this case, [Petitioner] should be permitted to adopt [Child] without requiring [Mother] to relinquish her parental rights.   These co-parents have created and sustained a remarkably successful relationship as co-parents to [Child].  The parties should not be deprived of the legal recognition of the

- 12 -

parent-child relationship between [Petitioner] and [Child], which under the statute clearly would have been permitted if they had petitioned the court to grant an adoption prior to the divorce of [Petitioner] and [Mother] in 2019. Not only will no purpose under the Adoption Act be served by requiring [Mother] to relinquish her parental rights in order to permit the adoption, but imposing that requirement would in this case disrupt the healthy parent-child relationship that [Child] has with each of [sic] [Mother] and [Petitioner].

[Petitioner] also testified that he wishes to adopt [Child], and that [Child] wishes to be adopted, because he does not want his rights to act as a parent to [Child] to be vulnerable to a change of circumstances. He testified that currently he can pick the child up at school, make decisions, and take him to doctors' appointments and dentist appointments. But only because of the express authorization of [Mother], and not because he independently has any of those rights.

The adoption of [Child] by [Petitioner] would provide legal recognition of an important and beneficial parent-child relationship that already exists. Permitting this adoption to occur, pursuant to the cause exception of Section 2901, without requiring the disruption or dissolution of the parent child relationship between [Mother] and [Child], would clearly be in the best interests of [Child], and would recognize a beneficial family relationship. As noted above, an adoption petition by [Petitioner] would clearly have been considered if it had been filed before the 2019 divorce, and his parental rights and responsibilities would then have continued after the divorce. Given the strong parental relationship established here, there is every reason to conclude that the adoption in this case may proceed without the requirement of a relinquishment of parental rights by birth mother, . . .

The peculiar posture of this case has required an analysis of whether the adoption petition of [Petitioner] may proceed under the statute, given the desire of [Mother] not to relinquish her parental rights, before this court could even consider the petition for termination of parental rights. . . .

Orphans' Ct. Op. at 7-11 (some formatting altered).

Following our review of the record, we agree with the orphans' court's determination that Petitioner and Mother are unable to marry because Mother has remarried; however, we are constrained to conclude that the orphans' court erred in its application of Section 2901 of the Adoption Act. **See M.E.L.**, 298 A.3d at 124.

We note that the orphans' court's findings of fact are supported by the record. **See** Orphans' Ct. Op. at 3-5, 7-9; **see also H.H.N.**, 296 A.3d at 1263 (explaining that appellate courts defer to the factual findings and credibility determinations of the trial courts which had the opportunity to observe the parties and witnesses first-hand). The record establishes that Mother and Petitioner divorced in 2019, and Mother has since married C.F. **See** N.T., 3/6/24, at 61, 75, 78, 93, 105. Therefore, Petitioner has satisfied the first part of the test under 23 Pa.C.S. § 2901 because Mother and Petitioner cannot legally marry. **See M.E.L.**, 298 A.3d at 127; **see also J.M.B.**, 308 A.3d at 1268; **see also** 18 Pa.C.S. § 4301; 23 Pa.C.S. § 3304(a)(1).

However, in order to excuse the relinquishment requirement under Section 2901, the facts must also establish that "the purpose of Section 2711(d) would nevertheless be fulfilled or unnecessary . . . despite the parties' inability to fulfill the statutory requirements." **M.E.L.**, 298 A.3d at 127. Our Supreme Court has explained that the purpose of requiring parents to relinquish their parental rights as a prerequisite to adoption under Section 2711(d) is "to facilitate a new parent-child relationship between the child and the adoptive parent, and to protect the integrity and stability of the new family

- 14 -

unit." ***M.R.D.***, 145 A.3d at 1128 (citations and quotation marks omitted). Further, in this context, "family unit" has the specific meaning of the adopting parent living together with the legal parent and the child. ***See id.***; ***see also J.M.B.***, 308 A.3d at 1271.

Here, the record indicates that Petitioner and Mother maintain two separate households. Specifically, Child resides with Petitioner, Brother, and the rest of the individuals in Petitioner's household, while Mother resides with her husband. ***See*** N.T., 3/6/24, at 61-63, 106; ***see also*** Orphans' Ct. Op. at 8 (observing that following Petitioner and Mother's divorce, both Child and Brother "remained living full time with" Petitioner). Therefore, Petitioner, Mother, and Child are not currently part of a single, intact "family unit" as that term has been used by our appellate courts. ***See M.R.D.***, 145 A.3d at 1128; ***J.M.B.***, 308 A.3d at 1271. Accordingly, we are constrained to conclude that the orphans' court erred in its application of Section 2901 because Petitioner has not shown that his adoption of Child, without Mother relinquishing her parental rights, will promote a new parent-child relationship within a new family unit. ***See J.M.B.***, 308 A.3d at 1269-71. Because Petitioner's proposed adoption does not strictly comply with the pertinent provisions of the Adoption Act, involuntary termination of Father's parental rights is not permitted. ***See M.R.D.***, 145 A.3d at 1120.

We emphasize that our conclusion does not disparage the familial relationship between Petitioner and Child. As the orphans' court aptly observed, "[Petitioner] has acted as a father to [Child] since he was

- 15 -

approximately two years old. [Child] is now 15 years old. [Petitioner] has lived with [Child] all those years, and is his primary parental figure. . . . To hear [Petitioner] describe [Child] is to listen to a proud and loving father." Orphans' Ct. Op. at 9; *see also J.M.B.*, 308 A.3d at 1271 (recognizing that "family is not always blood" (quotation marks omitted)). Further, the record supports the orphans' court's findings that Petitioner and Mother "have created and sustained a remarkably successful relationship as co-parents to" Child. Orphans' Ct. Op. at 10. Additionally, we recognize the orphans' court's efforts in grappling with a case that, in its view, presented an "unusual set of facts" that required a nuanced analysis of the requirements of the Adoption Act. *Id* at 3. However, we are bound to follow the precedential decisions of our Supreme Court and this Court. *See Matter of M.P.*, 204 A.3d 976, 986 (Pa. Super. 2019) (explaining that this Court's rulings "may not be disposition-driven[]" and this Court is "bound by decisional and statutory legal authority, even when equitable considerations may compel a contrary result").

Lastly, we echo the sentiment expressed by our Supreme Court in *M.E.L.*:

> [T]he relinquishment requirement for adoption and termination of another parent's rights over a child may be seen by some as anachronistic in this day and age, particularly given the changing notion of what it means to be "family." No longer is society's concept of family limited to a mother, father, and their children, as was commonplace at the time the Adoption Act was originally enacted. . . . Nevertheless, regardless of the wisdom of the spousal and relinquishment requirements, the General Assembly has not revisited these provisions, and they remain the law.

*M.E.L.*, 298 A.3d at 129.

For these reasons, we vacate the orphans' court's order terminating Father's parental rights due to Petitioner's failure to satisfy the adoption requirements at 23 Pa.C.S. § 2512(b), or the "cause shown" exception thereto at 23 Pa.C.S. § 2901.

Decree vacated. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/5/2024